(Decided June 7th, 1860.)

# GERARD GOVER *vs.* SARAH C. OWINGS.

By a marriage settlement, not creating a trustee for the wife, it was cove-nanted that the estate of the wife should be reserved to her, free from the control, and liability for the debts, of the husband, and the wife had power to direct the manner in which it should be invested and appropri-ated, and for such purposes as she might think fit. A part of her estate was subsequently sold, and the purchaser gave his notes for the purchase money, payable to her *"order," "use of her separate estate,"* which notes endorsed in blank, were in possession of the husband, who obtained advances on them from the defendant, the latter collecting the same from the maker, and paying over the entire proceeds to the husband, a part on the checks of the wife, and the residue to the husband directly. In an action by the wife, after the death of her husband, to recover from the defendant this residue so paid to the husband in his life time, HELD:

That the husband became the trustee of his wife, and was entitled to collect these notes, and, if he misapplied their proceeds, his estate is liable

to the wife therefor; the *defendant is not liable,* having paid the money to the trustee (the husband) in good faith and *without knowledge* of any proposed fraudulent misapplication of the fund by the trustee.

Where a trust is created in behalf of a married woman and there is no legal trustee created by the settlement, her husband becomes her trustee by operation of law, and as such has the right to reduce into possession her *choses in action,* for her sole use and benefit, and, like any other trustee, he and his representatives are responsible to her separate estate for whatever funds he may receive belonging to it.

APPEAL from the Superior Court of Baltimore City.

*Assumpsit,* brought on the 4th of January 1855, by the appellee against the appellant, to recover a sum of money alleged to have been improperly and illegally paid, by the defendant, to the husband of the plaintiff, during his life, said sum being claimed as belonging to and part of the plaintiff's sole and separate estate. Plea *non assumpsit.*

It appears, from the proof in the case on the part of the plaintiff, that the plaintiff, formerly named Mary Catharine S. Hubbell, being about to marry Samuel C. Owings, executed with the said Owings, and one Louis Regis Deluol, the following deed, called in the record a deed of marriage settlement:

"This Indenture of these parties, made this seventh day of June, in the year of our Lord one thousand eight hundred and forty-eight, between Samuel C. Owings, of the city of Baltimore, in the State of Maryland, of the first part, Mary C. S. Hubbell, of the same place, of the second part, and Louis Regis Deluol, of the same place, of the third part. Whereas, the said Mary Catharine S. Hubbell is seized and possessed to her and her heirs and assigns, of certain real and personal estate, situate and being in the city of Baltimore and elsewhere.

"And whereas, a marriage is intended shortly to be had and solemnized between the said Samuel C. Owings and the said Mary Catharine S. Hubbell, upon the contract of which marriage the said Samuel C. Owings hath agreed, that if the same shall take effect, then, notwithstanding the said marriage, he, the said Samuel C. Owings, his executors, admin-

istrators and assigns, shall not and will not intermeddle with, or have any right, title or interest, either in law or equity, in or to any part of the said real or personal estate, but the same shall remain, continue and be to the said Mary Catharine S. Hubbell, or to such use as the said Mary C. S. Hubbell shall think fit and appoint. Now this Indenture witnesseth, that for the making the said agreement effectual in law, and for the preserving of said real and personal estate to and for the separate use of the said Mary Catharine S. Hubbell, and so that the same shall not be in the power or disposal of the said Samuel C. Owings, the said Samuel C. Owings doth, for himself, his heirs, executors, administrators and assigns, covenant to and with the said Louis Regis Deluol, his executors and administrators, by these presents, that, notwithstanding the said intended marriage shall take effect, all the real and personal estate aforesaid of her, the said Mary Catharine S. Hubbell, particularly all mortgages held by her, or in which she is in any manner interested; all negro slaves now owned by her; all furniture of the said Mary Catharine S. Hubbell, a portion of which is now being forwarded from Louisville to Baltimore; all the furniture now standing and being in the dwelling house, No. eighty-seven, Eutaw street, in the city of Baltimore; all other the personal effects of every description now belonging to said Mary Catharine S. Hubbell, and all debts of every description due to or contracted with her, the said Hubbell, and all the rents which, from time to time, shall become due and payable to her from her said property, and all the interest due or to grow due, and all the increase or profits whatsoever of said property, shall be accounted, reckoned and taken as a separate and distinct estate, of and from the estate of him, the said Samuel C. Owings, and be in no wise liable or subject to him, or to the payment of any of his debts; but that all said real and personal estate, with the profits or increase that shall thereafter be gotten, gained or made of the same, be ordered, disposed and employed to such person and persons, to and for such use and uses, intents and purposes, and in such manner and form as is hereafter mentioned and declared, that is to say, that the money arising or accruing out of the said

separate and distinct estate before mentioned, shall, from time to time, be invested or appropriated to such purposes as the said Mary Catharine S. Hubbell shall think fit; which investments, during the coverture, shall be made in the name of the said Louis Regis Deluol, or in the name or names of such other person or persons as the said Mary Catharine S. Hubbell shall order and appoint in trust for her, the said Hubbell.

"And that all the said separate and distinct estate before declared and allotted for the said Mary Catharine, as aforesaid, and the produce and increase thereof, shall be had, taken, held, possessed and enjoyed by such person and persons, and for such use and uses, as the said Mary Catharine shall, at any time or times hereafter, during her life, limit, devise, order or dispose of the same, or any part thereof, either by her last will and testament in writing, or by any other writing whatsoever, signed with her hand in the presence of two or more credible witnesses. And it is likewise declared and agreed that it shall and may be lawful to and for the said Louis R. Deluol, and he is hereby authorized and requested, at any time or times after the solemnization of the said intended marriage, with the consent and approbation of the said Mary Catharine, testified in writing as aforesaid, if she shall then be living, and after the decease of the said Mary Catharine, then of the proper authority of the said trustee for the time being, to sell, transfer and dispose of, the stocks, funds, securities, or any other of the separate estate aforesaid, and to lay out the money arising thereby, in and upon new or other stocks, funds or securities of the like nature, or in any other description of property, when and as often as occasion shall require; and which new other stocks, funds and securities, and the interest, dividend and annual product thereof, shall go and remain upon the same trusts, and for the same intents and purposes as the stocks, funds and securities which shall have been so sold, transferred or disposed of, and the interest, dividends and annual produce thereof, or such of them as shall be then existing or capable of taking effect. And it is further covenanted and agreed by

and with the parties hereto, that he, the said Samuel C. Owings, shall and will, from time to time, and at all times from and after the said intended marriage shall take effect, upon every reasonable request, and at the proper costs and charges of the said Louis Regis Deluol, make, do and execute all and every such further act and acts, thing and things, for the better settling, recovering and receiving the monies, goods and estate of Mary Catharine S. Hubbell, allotted and and declared for her separate use, benefit and disposal, as by the said Louis Regis Deluol, or his counsel, learned in the law, shall be reasonably devised or advised or required In testimony whereof, the said Samuel C. Owings, Mary Catharine S. Hubbell and Louis Regis Deluol, have hereunto set their hands and seals, on the day and year first above written."

This deed was duly executed, acknowledged and recorded, and the marriage solemnized, and a part of the plaintiff's estate was subsequently sold to Col. J. S. Nicholas, who, in part payment of the purchase money, gave his two notes, one for $222.42, and the other for $1000, each payable "to the order" of the plaintiff, "use of her separate estate." These notes were placed in the hands of the defendant as collateral security for three checks, drawn by Mrs. Owings on the defendant, amounting to $505; two of which checks were payable to the order of Samuel C. Owings, and the other to bearer. The notes and checks were entered by the defendant in a bank book, produced by the plaintiff at the trial, and these notes were paid by Col. Nicholas at maturity to the defendant, and this suit was brought by the plaintiff after the death of Samuel C. Owings to recover the balance of the amount of the notes after deducting the checks.

The defendant proved by J. S. Nicholas, Esq., that Col. Owings applied to him to borrow money on a mortgage of Mr. Owings' separate estate for her use, and afterwards, as her agent, sold a part of her property to him, and that the two notes in question were given by witness to Col. Owings, for his wife, in part payment for said property, and that witness paid these notes at the banking house of Josiah Lee & Co., of which house the defendant was a partner. The de-

fendant also proved, by S. H. Taggart, Esq., that Col. Owings came to witness, who was attorney for Gover, to get witness to go with him to Gover, and Col. Owings then had both notes in his hands, endorsed by Mrs. Owings; they went together to Gover, and witness told Gover the notes were good and he could with safety take them; witness was called upon by Col. Owings to accompany him to the banking house of Josiah Lee & Co., to see Mr. Gover in relation to said negotiations between them; it was stated that Gover had made advances on account of the notes in question; the amount of the notes and advances were calculated at the counter in the presence of witness, and Gover paid to Col. Owings a further sum of money as an advance, which witness understood was the full amount that would be coming to him; witness saw no check and no book at that time.

It was admitted by the plaintiff's attorney that the defendant had paid to Col. Owings the whole amount of the balance now claimed by the plaintiff, but when and how paid is not admitted, and it is not admitted that Col. Owings was authorized by Mrs. Owings to receive it.

Upon these facts, several prayers were offered on the part of the defendant, which were rejected by the court (LEE, J.) to which rulings the defendant excepted. The ground upon which the decision of this court is made, renders a statement of these prayers unnecessary. The verdict and judgment were in favor of the plaintiff and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*J. N. Steele*, for the appellant, argued:

1st. That the notes in question, and their proceeds when collected, were at law the property, not of Mrs. Owings, but of her husband, and were subject to his disposition and control. Under this marriage contract or agreement, there is nothing to show that Mrs. Owings had, *at law*, any such title to the property as would prevent the marital rights of the husband from attaching, whatever might be the effect in equity.

4 *Md. Rep.*, 280, *Peacock vs. Pembroke.* 6 *Md. Rep.*, 375, *Turton vs. Turton.* There is no question of survivor-ship in the case, for it is admitted the money was paid to the husband in his life time, and if he had a right to reduce it into possession, it was well paid to him. Now, whatever may be the construction of this marriage contract in other respects, it certainly did not create Deluol the legal trustee of Mrs. Owings, and if it created a trust for her separate use, and no trustee was appointed, her husband became her trustee, and as such had the right to collect the notes. 3 *Md. Rep.*, 550, *Ware vs. Richardson.* *Act of* 1853, *ch.* 245. *Atherly on Marriage Settlements*, 338, in 27 *Law Lib.* 2 *Roper*, 180. 1 *H. & G.*, 280, 291, *Buchanan vs. Deshon.*

2nd. That if the notes could belong at law to Mrs. Owings, she, by their unrestricted endorsement, and delivery to her husband, gave him authority to deal with them as owner, in so far as concerned third persons who might make advances on or discount them in whole or in part, in the absence of *mala fides* shown on the part of persons so dealing with him. *Story on Agency, secs.* 73, 228. 6 *Mass.*, 196, *Erick vs. Johnson.* 1 *Pet.*, 264, *Schimmelpeunick vs. Bayard.* 1 *Bos. & Pull.*, 648, *Collins vs. Martin.* 4 *Adol. & Ellis*, 870, *Goodman vs. Harvey.* 1 *Adol. & Ellis, N. S.*, 498, 504, *Arbouin vs. Anderson.*

*T. P. Scott*, for the appellee, argued:

1st. That the notes having been given for the proceeds of sale of a part of Mrs. Owings' separate estate, secured to her separate use under the deed of marriage settlement, and being so specially marked on their face, were protected under that deed, and were not subject to any claim of the husband or his creditors.

2nd. That the appellant having received these notes, and having collected them knowing of this trust, and that these notes were part of the trust estate, was chargeable with the amount, as trustee for her separate use. *Story's Eq., secs.* 1270, 1380, 1381, 1382. 3 *Md. Rep.*, 550, *Ware vs. Richardson.* 11 *Md. Rep.*, 37, *Hutchins vs. Dixon.* 13 *Md.*

*Rep.*, 360, *Chew vs. Beall.* 4 *Md. Rep.*, 280, *Peacock vs. Pembroke.* 6 *Md. Rep.*, 382, *Turton vs. Turton.* 10 *Md. Rep.*, 117, *Taggart vs. Boldin.* *Ambler*, 566, *Rippon vs. Dawding.*

LE GRAND, C. J., delivered the opinion of this court.

This is an action to recover from the appellant, who was the defendant below, a sum of money alleged to have been improperly and illegally paid to the husband of the plaintiff during his life, said sum being claimed as belonging to and as part of her sole and separate estate. The circumstances of the case may be thus briefly stated: The plaintiff, contemplating an intermarriage with a gentleman, who subsequently became her husband, together with him and another, executed the instrument of the 7th day of June 1858. This paper is designated in the record as the "marriage settlement," and was doubtless intended by the parties to it to convey out of her the *legal* title to her estate and to vest it in a trustee for her sole and exclusive use. It is not very artistically drawn, and did not, in our opinion, accomplish, in this particular, its intended office. We regard all those portions of it which refer to the interference of the third party (Louis R. Deluol) with her property, *as covenants* between the parties that her estate should be reserved to her free from the control of and liability for the debts of her intended husband. But, whilst we do not consider the instrument as directly divesting her of the legal estate, we deem it sufficient to authorize her to direct the manner in which it should be *"invested and appropriated,"* and for *"such purposes"* as she might *"think fit."*

In this state of marital relations between the plaintiff and her husband, a portion of her estate was disposed of to J. Spear Nicholas, who gave his notes for it. They promise to pay to the *"order"* of the plaintiff, *"use of her separate estate."* These notes were paid at the banking-house of Josiah Lee & Co., of which firm, the defendant was a member. From the evidence it appears they were endorsed in blank, and, in this condition, were in the possession of the husband

of the plaintiff, who obtained advances on them from the defendant. A portion of these advances were made on the checks of the plaintiff, and the residue paid to her husband. It is to recover this residue that this action was brought, it being insisted, that the defendant having received and collected the notes, knowing that they belonged to the separate estate of the plaintiff, he received them and their proceeds, subject to, and charged with the trust, and that the payments, other than on the checks of the plaintiff, were made by the defendant in his own wrong.

It is admitted that the defendant paid the whole amount received by him, part on the checks of the plaintiff, and the balance of it to her husband.

In the view we have of this case it is not important to inquire, whether, the plaintiff had the right, under the terms of the ante-nuptial contract, to appropriate the proceeds of the note, if she thought "fit," to her husband, or, whether, by the law governing negotiable paper, she had, by the very terms of the note, power to confer title on the holder, either by a special or blank endorsement. If the power existed in either supposed case, then, clearly, this action cannot be maintained. But, we do not decide the case on such ground.

When a trust is created in behalf of a married woman, and there is no legal trustee created by the settlement, her husband becomes her trustee by operation of law, and as such, has the right to reduce into possession her *choses in action* for her sole use and benefit. And, like any other trustee, he and his representatives are responsible to her separate estate for whatever funds he may receive belonging to it. In virtue of this principle the husband of the plaintiff became her trustee, and was entitled to collect the note in question. If he misapplied the proceeds, his estate is liable to her claim, and not the party who has once honestly paid the amount of it. The case of *Bennet vs. Davis,* 2 *Peere Williams,* 316, is to the point, that where there is a devise to a *feme covert* for her separate use, without appointing any trustee, a court of equity will supply the want of one by regarding the husband as such.

Gover *vs.* Owings.

It is the duty of trustees, as of executors, to render available the *choses in action* of their *cestui que trust,* and to enable them to do this, they have the right to resort to the proper means for their collection. Their receipt and release is a sufficient acquittance to the debtor. The only exception to this is, where the debtor knows the trustee intends to commit a breach of trust; in such a case, it would not, according to some of the authorities, be safe to pay to the trustee, whether he has an express power of signing receipts or not. But, even in such cases, the fact of such knowledge must be brought home to the person paying, so as to make him *particeps criminis,* a privy to the fraud. *Lewin on Trusts,* 331, *marginal.*

In the case now before the court, there is no pretence or allegation of fraud against the appellant; all that has been contended for is, that the circumstances under which he received the notes were sufficient to inform him that they belonged to a trust fund. This was not sufficient to invalidate his payments to the trustee; something further was necessary; a knowledge on the part of the debtor of a purposed fraudulent misapplication of the fund by the trustee.

From what we have said, it will appear, we are of opinion the plaintiff cannot recover against the defendant on the facts in this case, and, it is, therefore, not necessary we should consider the form of the instructions granted or refused by the court. We reverse the judgment without *procedendo.*

*Judgment reversed.*

(Decided June 12th, 1860.)