. No. 2210.

## A. S. RICHARDSON, EXECUTOR, v. ELVIRA W. HUTCHINS.

1. GIFT FROM HUSBAND TO WIFE.—When it is made clearly to appear that the husband has taken an obligation from a third party, which by its terms purports to vest in the wife, as her separate estate, any interest or right, the contract will be regarded as consummated, though the paper which evidences the right of the wife has never been actually delivered to her, or to any third person for her, and the thing or interest denoted has remained under the control of the husband.

2. HUSBAND AND WIFE.—The law which invests the husband with the sole management of the separate estate of the wife, clothes him with all power necessary or incident to the exercise of his authority, but gives him no power over matters affecting her right or title to the property, nor does it authorize him to perform any act by which her title may be endangered.

3. SAME.—Though in this State the husband does not hold title to his wife's separate estate in trust for her, yet when a conveyance is made to a wife for her separate use and benefit, and no trustee is named, the husband becomes, by virtue of the authority with which the statute invests him, essentially a trustee, and with reference to the specific property he is charged with duties, for the violation of which any estate subject to the payment of his debts is liable.

4. SAME.—When the wife's separate estate consists of securities which may be legally converted into money, the husband can not, after conversion, appropriate it to the payment of debts for which the wife's separate estate is not liable, or mingle it with funds belonging to himself or the community estate, or invest it in his own name, without rendering his estate liable for its repayment. On this point, the cases of Gover v. Owings, 16 Maryland, 99; Dent v. Slough, 40 Alabama, 523; Andrews v. Huckalee, 30 Alabama, 156; Green v. Brooks, 25 Arkansas, 318, and Walker v. Walker, 9 Wallace, 753, cited and approved.

5. CIVIL LAW REVIEWED.—The civil law governing the liability of the husband's estate for the wife's dowry and paraphernal property, as also the laws of Louisiana pertaining to the wife's dotal property, reviewed, and their analogy to the husband's control of and liability for the separate property of the wife under the laws of Texas, referred to.

6. INTEREST ON THE WIFE'S SEPARATE FUNDS.—Interest derived from bonds which are the separate property of the wife is community property, which the husband may use without being liable therefor to his wife, unless such interest by gift from the husband become also her separate estate, and was afterwards converted by the husband to his own use.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The opinion states all facts necessary to its being properly understood.

*Baker, Botts & Baker* and *Hutcheson & Carrington,* for appellants: On their propositions,

1. That the wife can not maintain a suit against her husband or his estate for the conversion of her separate property, because the law gives him the sole management of it during the marriage.

2. Nor can she, for the same reason, maintain an action against him or his estate for money of hers, or the value of her choses in action which he received and used during the marriage, but which she can no longer trace or identify, whether used with or without her consent, except upon his express promise to her, in consideration thereof, to reimburse or pay her therefor, they cited Revised Statutes, article 2851, page 411; Hall v. Hall, 52 Texas, 294.

On their proposition that if the plaintiff was entitled to recover the principal, yet there was error in allowing her interest on it, because the interest belonged to the community. But if entitled to interest she should not recover a greater rate than the bonds bore, which was seven per cent, they cited Braden v. Gose, 57 Texas, 37; Zorn v. Tarver, 45 Texas, 520; Claiborne v. Tanner, 18 Texas, 78; Wells on Married Women, section 378.

On their proposition that the court erred in holding under the facts that plaintiff was entitled to sue and recover in this form of action; that she never had possession of the property; all the claim she had to the property grew out of the letter placing it in the hands of Reid, to be by him held. She could not bring an action of trover, nor any action to which Reid was not a party. An action of trover only vested in Reid, if anywhere, they cited Bliss on Code Pleadings, sections 23, 35; Richardson v. Means, 22 Missouri, 495; Tyler v. Houghton, 25 Colorado, 29; Jacob Fisher's Digest, volume 8, title "Trover," paragraphs 13, 119, and cases cited; Wait's Actions and Defenses, volume 6, title "Trover," pages 154, 155, 217, 218; Cooley on Torts, 445.

On their proposition that, at common law, a gift was only complete when the donor lost control over and the donee came into control and possession of the thing given. The fact that it

passed from the possession and control of the donor into the hands of an intermediary did not vest it until it reached the control of the donee. It was revocable by the donor and ineffectual as to the donee until delivered—the intermediary being the agent of the donor till delivery, they cited Wait's Actions and Defenses, volume 3, page 492; Sessions v. Mosely, 4 Cushing, 87; People v. Johnson, 14 Illinois, 342; 2 Kent's Commentaries, third edition, marginal, 439; Cook v. Husted, 12 Johnson, 188.

On their proposition in behalf of the bank as intervenor, that the testimony does not show with sufficient clearness, nor is there any allegation in the petition to warrant the finding, that W. J. Hutchins was entirely solvent at the time he undertook to subtract from the community seventy-five thousand dollars and set it apart to his wife. Mr. Hutchins being then indebted to intervenor in the sum of one hundred and forty-nine thousand dollars, it devolved on plaintiff to allege and to prove the entire solvency of said estate at that time, which is neither alleged nor proven in this cause, and could not be proven, not being alleged, they cited Wait's Fraudulent Conveyances, sections 94, 95, 208.

On their proposition that, admitting the estate to have been solvent, and to have warranted the subtraction in 1869 of seventy-five thousand dollars, to be bestowed on his wife as a bounty, yet if, after undertaking to do so, he again got possession of the subtracted fund, held it aloof from his creditors, invested and lost it, or dissipated and spent it, the plaintiff could not, to reimburse her for his misjudgment or extravagance, invade the community fund until the debts due intervenor were discharged, they cited Morrison v. Clark, 55 Texas, 444; Van Bibber v. Mathis, 52 Texas, 406; Stewart on Husband and Wife, section 116, and cases cited.

*Jones & Garnett,* for appellee, cited the following authorities as their answer to appellant's propositions of law: Howard v. North, 5 Texas, 298; McKay v. Treadwell, 8 Texas, 180; Morrison & Hart v. Clark, 55 Texas, 444; Smith v. Boquet, 27 Texas, 512; Story v. Marshall and Wife, 24 Texas, 305; McKamey et al. v. Thorp et al., 61 Texas, 648; Ross v. Kornrumpf, 64 Texas, 390; Ryan v. Ryan, 61 Texas, 473; Hall v. Hall, 52 Texas, 298, 299; Price v. Cole, 35 Texas, 471; Wilson v. Wilson, 36 California, 449; Cox v. Miller, 54 Texas, 26; Wells v. Fairbanks, 5 Texas, 584, 585; Turner v. Lambeth, 2 Texas, 369; Tompkins v. Bennett, 3 Texas, 47.

STAYTON, ASSOCIATE JUSTICE. On October 21, 1869, and for a long time prior to that date, W. J. and Elvira Hutchins were husband and wife. During their marriage they acquired a large communty estate, the value of which, during the years 1869, 1870 and 1871, some of the witnesses estimated at not less than a half million of dollars in excess of the indebtedness. All the evidence shows that during the years named W. J. Hutchins was a wealthy man.

About September 30, 1869, W. J. Hutchins held the obligation of the Houston & Texas Central Railway Company for one hundred and five of its first mortgage bonds, each for one thousand dollars, and bearing seven per cent gold interest. On the day last named he surrendered that obligation and received in its place one in favor of himself for thirty bonds, and another for seventy-five of such bonds payable to his wife, who is the plaintiff in this case.

Those obligations for bonds, as between the railroad company and their holders, for the purpose of collecting interest and like purposes, stood as would the bonds had they been issued and delivered.

After the obligation to Mrs. Hutchins for seventy-five bonds was issued, her husband forwarded them to A. L. Reid, a resident of New York, who seems to have been an old and intimate friend of the family, and the following letter accompanied the obligation:

HOUSTON, Oct. 21, 1869.

*Mr. A. L. Reid,*
*N. Y.*

DR SIR : I send you herein note against the Houston & Texas Central R. R. for seventy five one thousand $ bonds, in favor of my wife, the N. Yk agent is instructed to pay the interest regularly in N. Yk. You will please hold it for my wifes benefit.　　　　　　　　　　　　　I am very Respy
　　　　　　　　　　　　　　　　　　　　W. J. HUTCHINS."

Mr. Reid received the obligation soon after the date of that letter, and held it until the eighteenth of February, 1871, during which time he collected the interest falling due on the bonds for the sole use and benefit of Mrs. Hutchins, who was then in Europe. Mr. Reid testified in the case, and after stating that he held the obligation as the separate property of Mrs. Hutchins, testified as follows: "During the time I held said note as stated,

I had several conversations at different times with W. J. Hutchins, in which he spoke of and treated said note as the separate and individual property of the plaintiff in this suit, which he had given to her, and which he placed in my hands by said letter of October 21, 1869, to hold for plaintiff. W. J. Hutchins told me the reason why the note was made payable to his wife, that he intended the note, at the time of its execution, as a gift to his wife."

In accordance with request made by W. J. Hutchins, Reid returned the note or obligation for bonds to him about February 18, 1871, after which he surrendered it to the railroad company, and received in its place two other obligations of the company in the aggregate for the same number of bonds, each payable to himself, which he held, or at least collected interest upon, until the end of the year 1876, after which they went into the hands of another holder to whom the obligations were paid.

Soon after the obligation was placed in the hands of Mr. Reid, Mrs. Hutchins, then in Europe, was informed by a letter from her husband that he had placed it in his hands as a donation to her. She was also informed by Reid.

In the year 1877, in a conversation with Thomas L. Rushman, an acquaintance and intimate friend for forty years, W. J. Hutchins stated that he had given to his wife seventy-five thousand dollars in securities, which he had subsequently used in his business, but that he intended to secure her against loss. That the obligation was placed in the hands of Reid with intent to make a donation to Mrs. Hutchins seems to have been well understood in the family, from declarations made by W. J. Hutchins before and after he received the obligation from Reid.

Mrs. Stewart, a daughter, testified to repeated declarations of her father to that effect, and of his expressions of intention to reimburse his wife. She stated that "these conversations occurred frequently, both before and after February, 1871. Sometimes my mother was present and sometimes was not when my father spoke of it. I do not know the exact date when the plaintiff ascertained the fact that said bonds and note for bonds had been delivered by A. L. Reid to W. J. Hutchins. She learned it from W. J. Hutchins some time in the spring of 1871. He said he wanted to use the note and would reimburse her for it. I do not remember what my mother said."

W. J. Hutchins died on the fifth of June, 1884, and this action was brought against the executor of his will, on the tenth

of October, 1885, by Mrs. Hutchins, to recover the value of the bonds with interest thereon.

The cause was tried without a jury, and resulted in a judgment in favor of the plaintiff for the estimated value of the bonds and for interest thereon from February 18, 1871, at the rate of eight per cent per annum. The City Bank of Houston, claiming to hold an indebtedness against the estate of W. J. Hutchins, existing on October 21, 1869, intervened. The defendant and intervenor appealed.

The trial court found that W. J. Hutchins intended to make and did make a gift to his wife, and that the donation was no more than a reasonable provision, considering the donor's wealth and standing at the time it was made. It was further found that, at the time the gift was made, W. J. Hutchins owed about one hundred and fifty-nine thousand dollars, and that he was never at any time, from September, 1869, to the time of his death, worth less than three hundred thousand dc rs, and that after making the gift "he had over six hundred thousand dollars worth of property in Texas belonging to him, which was more than three times the amount of any and all indebtedness by him."

From an inspection of the evidence offered we are not able to say that the finding as to the estate of the deceased, at the time the gift is claimed to have been made, was not justified; nor are we prepared to hold that seventy-five thousand dollars was an unreasonable provision for a husband, possessed of such an estate, to make for his wife.

The appeal of the intervenor need not be further noticed, except as the assignments of error involve the same questions presented by the other appellant. That a husband may make a gift to his wife, of his separate estate or of community property, without the intervention of a trustee is well settled in this State, if not in all the other States of this Union. (Story v. Marshall, 24 Texas, 306; Smith v. Boquet, 27 Texas, 512.)

That W. J. Hutchins intended to make a gift of so much of the community property to his wife the evidence makes too clear for controversy. If the obligation, made at the request and under the direction of the husband in favor of his wife, had never been delivered to Reid to be held for her as her separate property, the evidence is ample to show that by the act of making the obligation payable to his wife, the husband intended

to vest in her, as her separate estate, every thing or right the obligation on its face professed to secure to her.

In transactions between husband and wife, when this is made clearly to appear, the contract is held to be consummated though the paper which evidences the right of the wife was never actually delivered to her or to any third person for her, or though the thing donated has remained in the possession of the husband. (Higgins v. Johnson, 20 Texas, 393; Smith v. Boquet, 27 Texas, 512; Brown v. Brown, 61 Texas, 58; Hillebrant v. Brewer, 6 Texas, 49; Crawford's Appeal, 61 Pennsylvania State, 52; Deming v. Williams, 26 Connecticutt, 226.)

The obligation was the evidence of the right, and the only thing, at the time, susceptible of a delivery, and the delivery of it to Reid to be held by him for the benefit of Mrs. Hutchins would satisfy the rule of law which requires the delivery of the thing given to complete the donation, had not the transaction been one between husband and wife. The right to the seventy-five bonds became the separate property of Mrs. Hutchins, and that the benefits of this right were subsequently appropriated by her husband to purposes having no relation to her separate estate, is fully shown. The only inference which can be drawn from the evidence is that the proceeds of the obligation for bonds, or bonds, were used in the course of his business, which pertained to the community, it not being shown that he had any separate estate. It is not denied, if the right to the bonds or their value became the separate estate of Mrs. Hutchins and was subsequently used by her husband in the community business, that the community estate would be liable upon the express promise of the husband to reimburse the wife for her property so used; but it is denied that the community estate, or separate estate of the husband, were there any, is liable in the absence of any express contract. It is not shown that W. J. Hutchins owned any separate property, nor that he carried on any business other than that which pertained to the community of which he was the representative.

There is evidence tending to prove that W. J. Hutchins, after he had used the separate property of his wife, promised to reimburse her; and we know of no rule of law which requires promises to be in writing when made by a husband to his wife under such circumstances as are presented in this case. A promise in writing may import a consideration which a verbal promise will not, but when a consideration for a promise is

shown, a verbal contract, when the law does not require the particular contract to be in writing, is as valid as though it were written. It may be more difficult to prove, but it is no less binding.

The court, however, did not base its judgment on an express verbal promise, but upon the broad ground that the community estate of a deceased husband is liable for the value of the separate estate of the wife, used by him even in the business of the community. The separate estate of a husband or wife is as distinct from the community estate owned by them, as to title, as is the estate of any person in no way related to. another to such other's estate.

The separate estate of a wife, by mere operation of law, can never be made liable for community debts, while both the community estate and the separate estate of a husband will be liable for any debt he may contract. What shall be the separate estate of a wife is declared by the Constitution, as well as by statute. (Constitution, article 16, section 15; Revised Statutes, article 2851.) The law, however, provides that "during the marriage the husband shall have the sole management of all such property."

As said in McKay v. Treadwell (8 Texas, 180), "this invests him with such control and powers as are incident and necessary to the due exercise of his authority, but gives him no power over matters affecting her right or title to the property, or to perform any act by which such title may be endangered."

While a husband does not, here, *hold title* to his wife's separate estate in trust for her, as he is held to do in England and in the States of this Union generally, when a conveyance is made to a wife for her separate use and benefit and no trustee named, yet it does not follow from this that the husband is not, as to the wife's separate property, essentially a trustee, charged with duties for the violation of which any estate subject to the payment. of his debts will be liable.

A person is said to be a trustee in whom a power over property or affecting it rests for the benefit of another; and a person having such power is as essentially a trustee as is one in whom the title to the property which he has the right to control, is vested, for the benefit of another. The husband is here made by statute the trustee for the wife, with power to manage and control her separate property, and we see no reason why he shall not be held to the duties and liabilities which ordinarily attach to that rela-

tion.   So long as he manages the separate estate of his wife with reasonable care, not diverting. it from the purpose for which the law places it in his hands and control, though loss may result from his management, he is not liable therefor; but can it be said that such a trustee may convert the separate estate of the wife into money or other property and appropriate that to the benefit of himself or to the benefit of the community, and not be liable for its value?

If the wife's separate estate consists in money, or in securities which he may convert into money legally, may he pay a debt of his own, for which the wife's separate estate is in no way liable, with it?   May he mingle such separate estate with funds of his own or of the community so that it can not be identified, or may he so invest it in property in his own name that it can not be followed, and thereby escape liability?   If so, the separate estate of a married woman, notwithstanding the solicitude shown by the Legislature to. protect it, has no protection at all, and the husband, whose duty it is to preserve, has the unrestrained power to destroy such estate, unless it consists in such things as the husband can not dispose of without the wife's consent, in which case the wife may preserve her estate by refusing to sell, and thus keep up its identity.

The rule is that every trustee is liable for the diversion of a trust fund, and upon the death of a trustee this liability rests upon his legal representative and must be satisfied out of such funds in his hands as are subject to the payment of the claims of creditors generally.   That the husband is made a trustee by the operation of law does not change the rule.   In the case of Gover v. Owings, 16 Maryland, 99, it appeared that a husband had collected a note, the separate property of the wife, and the court, after declaring that he became a trustee by operation of law, said that he "as such has the right to reduce into possession her choses in action for her sole use and benefit.   And, like any other trustee, he and his representatives are responsible to her separate estate for whatever funds he may receive belonging to it.   In virtue of this principle the husband of the plaintiff became her trustee, and was entitled to collect the note in question. If he misapplied the proceeds, his estate is liable to her claim." In Dent v. Slough, 40 Alabama, 523, it appeared that a husband had invested funds which belonged to his wife's statutory estate in a mercantile partership, and it was held that the wife was entitled to be classed as a general creditor of his estate after his

death. The same ruling, in effect, was made in Andrews v. Huckalie's Administrator, 30 Alabama, 156, and in Green v. Brooks, 25 Arkansas, 324; Walker v. Walker, 9 Wallace, 753.

The relation of the husband to the property which the wife brings in marriage to him, as dowry, under the civil law, bears a very close analogy to his relation to the separate estate of his wife under the statutes of this State, as does his relation to the wife's paraphernal property, when it is not administered by the wife. In reference to the right of the wife to restitution of the dowry, the rule is thus stated: "The last engagement of the husband is to restore the dowry, whenever the case happens that it ought to be restored; as if the wife dies without children before the husband; if the marriage is declared null and void; if they are divorced or separated from bed and board; or if the wife obtains a separation of goods only because of the husband's poverty; if the dowry was given to the husband at the time of espousals and the marriage was not accomplished. And when the husband dies, his engagement to restore the dowry passes to his heirs, executors or administrators." (Domat's Civil Law, 870.) The same rule applies in reference to paraphernal goods when administered by the husband, and in neither case is it based on an express contract.

In Louisiana the separate property of a wife is dotal or extra dotal, which embraces that which the wife brings to the husband to assist him in bearing the expenses of the marriage establishment, and termed "dowry," and that which by the civil law is termed paraphernal. (Civil Code, 2315.)

That code provides, in substance, the same rules to which we have referred for the adjustment of the rights of the wife in reference to her separate estate after the death of the husband, and, its provisions but adopt and illustrate the rules of the civil law. (Degruy v. St. Pe's Creditors, 4 Martin, new series, 407; Jasquet v. Dinutey, 9 Louisiana, 588.)

In that State, for separate property of the wife misapplied by the husband, his estate, which embraces the community, has been steadily held liable, and her standing, even as a preferred creditor, recognized. (Casson v. Blanque, 3 Martin, 390; Hannie v. Browder, 6 Martin, 14; Dreux v. Dreux, 3 Martin, new series, 239; Daigle v. Crow, 15 Louisiana Annual, 597; Rachal v. Le Roux, 18 Louisiana Annual, 588; Gillett v. Deranco, 6 Louisiana Annual, 590; Barbet v. Roth, 16 Louisiana Annual, 271; Breaux v. LeBlanc, 16 Louisiana Annual, 145.)

A rule which would deny a wife's right to recover from a deceased husband's estate the value of her separate estate which he diverted, unless he expressly promised to pay for it, would make her right to depend upon the sense of justice or arbitrary will of a husband, and not upon facts which will ordinarily entitle a beneficiary to recover from a trustee.

The court below allowed interest on the seventy-five bonds from February 18, 1871. This, we think, was error. The interest accruing on the bonds, it is true, was a revenue derived from the separate estate of the wife, but the law of this State declares that to be community property, and this the husband may use without liability to the wife. The deceased was entitled to such revenue so long as he lived, and no use he may have made of the bonds can entitle the wife to interest, unless there be that in the evidence which shows that he gave to her the revenue to be derived from the bonds. There was no declaration to that effect, nor was there anything in the conduct of the donor from which it appears that such was his intention. In the absence of this, it can not be held that the revenue was not community property, as all such income, in the absence of proof to the contrary, is presumed to be.

The judgment will be reversed and here rendered in favor of the appellee for the sum of sixty-seven thousand five hundred dollars, the value of the bonds as found, with interest on that sum at the rate of eight per cent per annum from the fifth day of June, 1884.

*Reversed and rendered.*

Opinion delivered February 28, 1887.