**UNITED STATES FIDELITY & GUARANTY CO. v. FIRST NAT. BANK OF FORT WORTH.**

No. 13102.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 22, 1935.

Rehearing Denied March 22, 1935.

Arthur Haddaway, of Fort Worth, for plaintiff in error.

Allen & Gambill, of Fort Worth, for defendant in error.

BROWN, Justice.

The record discloses that for a number of years, prior to the incidents out of which this suit arises, Herbert Graves had been a trader on the stockyards of Fort Worth, operating under a trade-name, and that some three or four months before he failed in business (which was shortly after the transactions were had that brought about the present litigation), he also engaged in the live stock commission business, mixing the funds received in both businesses in two different bank accounts.

The account made with the Stockyards National Bank of Fort Worth was carried in the name of "Herbert Graves," and the checks had printed thereon "Herbert Graves, Cattle Dealer."

The account, in the First National Bank of Fort Worth, during the time the transac-

tions were had which precipitated the instant suit, was carried in the name of "Herbert Graves Commission Company"; the checks having such words and name printed upon them, in the upper left end of each check, and the signature being printed as follows: "Herbert Graves Commission Company, by ——————."

Appellant, United States Fidelity & Guaranty Company, was the surety upon Herbert Graves' bond as a live stock commission merchant, or factor.

It appears that the proceeds of all of the live stock, sold by Herbert Graves to the two packing houses, located in Fort Worth, were, by the packers, deposited in the account carried by Graves in the Stockyards National Bank, and that he also deposited in said bank moneys received by him when trading in cattle for himself. When the funds in the "Stockyards Bank" grew to considerable sums, so as to justify his so doing, Graves would draw checks on such account for $1,000, $1,500, or $2,000 payable to the First National Bank, and deposit such sums to the credit of his account in the payee bank. Other deposits were likewise made to Graves' account, in said bank, both from proceeds of commission sales and private sales made by Graves.

On February 2, 1932, Graves borrowed $2,500 from the First National Bank, for the express purpose of personally trading in cattle on the stockyards, gave his note therefor, and promised and agreed to promptly repay the bank out of the proceeds of the sale of the live stock purchased with such funds. The sum of $2,500 was promptly placed to Graves' credit in the lending bank, appellee here. The record discloses that between February 2 and February 9, 1932, Graves made the sales of the cattle purchased with the borrowed money, and made deposits in the First National Bank of proceeds from the sales, in excess of the sum borrowed, together with the proceeds of other transactions, and that on February 8, 1932, Graves drew a check on his account in the Stockyards National Bank for $2,000, made payable to order of the First National Bank, and on February 9, 1932, drew a similar check in the sum of $1,000. The $2,000 check was credited to the account in the First National Bank on February 8, 1932; the $1,000 check was so credited on either February 9th or 10th; the testimony failed to fix the date, but the bank account shows a deposit of $1,019.60 on February 9th, and a deposit of $1,010.41 on February 10th.

On February 8th, Herbert Graves executed a draft payable to the First National Bank in the sum of $2,503.90, drawn upon Herbert Graves Commission Company, to pay off the loan, with interest, made to him by the payee bank; and on February 9th, N. F. Boone, acting with full authority from Graves, drew a check in the sum of $2,509.05 on the account in the First National Bank, carried in the name of "Herbert Graves Commission Company," and made same payable to the order of said First National Bank, for the express purpose of taking up the said draft, and to pay off the note due said bank, covering the loan made one week before.

This suit was brought by the United States Fidelity & Guaranty Company, appellant, against the First National Bank of Fort Worth, appellee, alleging that Graves had been, for some time prior to the happening of the events complained of, doing business as a live stock commission agent, in Fort Worth; that he carried his account with appellee bank under the name "Herbert Graves Commission Company," and in the Stockyards National Bank of Fort Worth under the name "Herbert Graves"; that the greater portion of the sums of moneys deposited in each account was from proceeds of sales of live stock made by Graves as a commission merchant; that "the defendant had full notice and knowledge of the fact that Herbert Graves was in the live stock commission business, and of the method and custom pursued by said Herbert Graves in the operation of his commission business and was well acquainted with the banking methods and the two bank accounts of said Herbert Graves. The defendant had full notice and knowledge that the large majority of moneys deposited in said Stockyards National Bank and in the defendant bank were the property of various owners of live stock sold, and that they were funds held by said banks and by Herbert Graves in trust for the owners and sellers of live stock, and that Herbert Graves was bound to pay such proceeds to the various owners and sellers of live stock. The defendant knew well that the moneys on deposit with it, including moneys transferred to the defendant by check upon the Stockyards National Bank, were deposited with it under the style 'Herbert Graves Commission Company' and knew well that said moneys were paid out by check upon a printed form bearing the printed signature of 'Herbert Graves Commission Company,' and that remittance was made to the owners of live stock sold by Herbert Graves on commission by such checks drawn upon defendant bank."

Appellant further alleged that on February 8, 1932, Graves, acting as a commission agent, sold, for A. J. Owens, consignor, 54 head of steers to Swift & Co. for the gross sum of $2,015.33, the net proceeds being $1,-795.61, and on February 9th, so acting, sold for consignor, Garcia Land & Livestock Corporation, 30 head of cattle, to Edgar Kerr, at a gross price of $638.87, and a net price of $507.85, and sold, for such consignor, 26 steers to one Watts, at a gross price of $607.-14 and a net price of $482.50; and sold, for Canales & Vela, consignors, 27 steers to Swift & Co., at a gross price of $815.22 and a net price of $694.04.

That on February 9th the gross proceeds of the Owens sale, $2,015.33, were deposited to Graves' account in the Stockyards National Bank; and on the same date a portion of the proceeds of Garcia Land & Livestock Corporation sales, amounting to $638.87, was similarly deposited; that a portion of the proceeds of the sale of the last-named consignor's steers, in the sum of $607.14, was deposited directly to Graves' account in defendant bank; and that the gross proceeds of the sale of the Canales and Vela cattle, in the sum of $815.22, were deposited to Graves' account in the Stockyards National Bank.

Appellant alleges that on February 8, 1932, Graves drew his check in favor of defendant bank, on his account with the Stockyards National Bank, in the sum of $2,000, and deposited such amount to his credit in said appellee bank, and on February 9th Graves drew a similar check in the sum of $1,000, which was similarly credited.

Appellant alleges that the $2,000 check contained $1,302.37 of the net proceeds of the sales of cattle consigned to Graves by A. J. Owens and Canales and Vela, and the $1,000 check contained $852.22 of the net proceeds of the sales of cattle consigned to Graves by Owens, Canales, and Vela, and Garcia Land & Livestock Corporation.

Appellant alleges that on February 9th, Herbert Graves Commission Company drew a check on the First National Bank, payable to its order, in the sum of $2,509.05, in payment of the personal debt Herbert Graves owed said defendant, "and the defendant wrongfully, willfully, knowingly and fraudulently in violation of the trust nature of the moneys on deposit with it, appropriated to its own use and benefit in payment of said debt the sum of $1,867.50 of said trust moneys, in addition to said $636.40 of other moneys. Said appropriation of trust moneys was made without any inquiry upon the part of the defendant bank before such appropriation to find out what portion of the moneys on deposit with it constituted proceeds of live stock sold upon commission and what portion of said moneys belonged to Graves individually." And alleged that if the defendant bank had made inquiry of either Graves, or Boone, his bookkeeper and office manager, it would have learned that the trust funds belonging to the named consignors of live stock were deposited in Graves' account with it.

Appellant alleged its obligation on Graves' bond; that Graves did not pay the named consignors; that Graves was at the times mentioned insolvent; that it, as surety for Graves, paid off the debts due by Graves to the consignors named, and was not only subrogated to the rights of the said consignors to recover from appellee bank, but had taken written assignments from the consignors of all such rights and claims, and sued both on the theory of subrogation, and in the alternative under the assignments.

It will be seen that appellant seeks to recover only the sum of $1,867.50, on the theory that it could and did trace such amount of the trust funds, belonging to the said consignors, into appellee bank, which the bank converted to its own use, under the circumstances set forth.

For the purpose of proving notice, appellant introduced Mr. Powell, a vice president of appellee bank, who made the $2,500 loan to Graves, heretofore mentioned. The witness testified positively that he did not know that Graves was in the commission business; he thought Graves was a trader. The witness testified further that he knew it was Graves' custom to draw transfer checks on the Stockyards National Bank in such sums as $1,000, $1,500, and $2,000, and frequently deposited them to his credit in witness' bank; that he had seen Graves' checks, with the printed signatures, "Herbert Graves Commission Company," used in connection with Graves' account in appellee bank; that witness' bank had some twelve or fifteen commission companies' accounts; that other live stock commission merchants who carry accounts in the Stockyards National Bank and in witness' bank handle such accounts in practically the same way as did Graves. He testified that Graves had been operating as a trader on the stockyards a long time, under a trade-name.

Appellant introduced Mr. Bowen, also a vice president of appellee bank, to show notice.

The witness testified that he never saw any of Graves' checks that were drawn on his bank and did not know that Graves was in the live stock commission business; that he did know Graves was in business at the stockyards as a buyer.

When the evidence was concluded, the trial court gave the jury a peremptory instruction to find for appellee bank, and judgment for the appellee was then entered. From this judgment the United States Fidelity & Guaranty Company appeals.

■ The presumption will be indulged that the funds standing in the name of the depositor belong to him, and, unless the bank can be properly chargeable with notice that funds deposited in the account are trust funds, it is justified in paying out the funds on order of the depositor, and will not be held liable therefor.

■ This presumption is rebuttable, but the burden is upon the cestui que trust, or his assignee, or upon one standing in his shoes, to overcome the presumption.

■ Where the trustee draws checks against funds, in which trust funds and his own are mingled, he will be deemed to have drawn out his own money and left that belonging to the cestui que trust.

Mr. Justice Levy, speaking for the Court of Civil Appeals (Texarkana), said, in First State Bank of Bonham v. Hill, 141 S. W. 300, 301: "It is the established doctrine that a depositor, although holding money in a fiduciary capacity, may draw it out of the bank ad libitum, and the bank incurs no liability in merely honoring the check drawn by him," citing Coleman v. First Nat. Bank, 94 Tex. 605, 607, 63 S. W. 867, 86 Am. St. Rep. 871.

In the Hill Case, the depositor permitted the bank to take the funds on deposit and cover his overdraft. The court said: "But it is not enough in order to hold the bank a wrongdoer to the beneficiary by accepting to the offsetting of the debt due by the agent out of the general funds in the name of the agent or trustee that the agent himself was committing a breach of his trust. Clearly we think, under the rules of law prescribed by the authorities mentioned, the proof must also show that the bank had knowledge at the time of the agency of the depositor, and, so knowing, participated with him in the breach of the trust, before it could be said that the bank by the act of offsetting the debt by the entry of debit was fraudulently or illegally participating with or aiding the agent or trustee in diverting the payment of the funds from the beneficiary; for, having notice of the rights of the beneficiary, then the wrong the bank would be doing the beneficiary would consist in and depend upon the act of joining with or aiding the agent in misapplying or diverting his funds; so, if notice on the part of the bank of agency in the depositor is wanting, then the basic element underlying the principle of law rendering liable those who participate in or agree to commit a wrong is absent."

The cases cited by appellant are those in which the proof was clear, positive, unequivocal, and undisputed that the bank in which the funds were deposited had notice that the funds abstracted by the trustee were in fact trust funds.

■ In the instant case, the proof seems clear, unequivocal and positive, and is undisputed, that neither of the officers of the defendant bank, who were questioned by appellant, knew that Graves was engaged in the live stock commission business. The mere fact that Graves carried his account in the bank in the name of "Herbert Graves Commission Company" is not, in our opinion, sufficient to require the defendant bank to make an effort to ascertain whether or not there were any trust funds mingled with Graves' account.

The judgment of the trial court is affirmed.