Annie HARTMAN, Individually and as Independent Executrix of the Estate of Morris Kuhlmann, Deceased, Appellant,

v.

Pearl Tiekoetter CRAIN, Guardian of the Person and Estate of Lula Tiekoetter Kuhlmann, Appellee.

No. 14692.

Court of Civil Appeals of Texas.

Houston.

Jan. 13, 1966.

James M. Harrington, Edward L. Lasof, Houston, for appellant.

Herman W. Mead, Houston, for appellee.

COLEMAN, Justice.

This is a suit for partition of the estate of Morris Kuhlmann, deceased, brought by the guardian of his surviving wife against his independent executrix, who is also the sole devisee under his will. The principal question to be determined is the ownership of funds deposited in the First City National Bank which Annie Hartman claims to own by virtue of a survivorship agreement. Appellee contends that, of the funds in the account, the sum of $5,927.55 constitutes the separate property of her ward and that the balance was community property of Lula Kuhlmann and Morris Kuhlmann. The trial court so found and awarded appellee $5,927.55 as her separate property together with one-half of the remainder.

In 1941 Morris Kuhlmann and his wife, Lula Kuhlman, established Account No. 13980 in the First National Bank in Houston and in connection therewith signed the bank's joint checking account form: "The First National Bank in Houston, Houston, Texas, is hereby authorized to recognize either of the signatures below in the payment of funds or the transaction of any other business. Either one or both or the survivor of the parties whose signatures appear hereon may sign checks for withdrawal or for the transaction of other business. The signature of either one shall be sufficient for withdrawal of all or any part of the fund standing to the credit of this account. * * *" The account was continued in the First City National Bank of Houston under the same signature card.

On October 29, 1956, the sum of $500.00, which Mrs. Kuhlmann inherited, was deposited in this account. Thereafter she received from the same estate the sums of $3,457.42 and $4,170.13, which were deposited in the account on November 5, 1956, and February 26, 1957, respectively. The balance in this account never was less than $8,127.55 during its existence.

On January 24, 1962, the sum of $13,311.66 was withdrawn from the account and placed in a new account in the name of M. C. Kuhlmann or Mrs. Annie Hartmann under an agreement constituting it a joint account with right of survivorship. After this withdrawal only $250.00 was left in the first account. The Kuhlmann-Hartmann account never fell below the amount of $8,127.55 during the lifetime of Mr. Kuhlmann or until the account was closed on June 27, 1963, and the sum of $8,992.64 transferred into an account in the name of the Estate of Morris C. Kuhlmann by Mrs. Annie Hartmann, Independent Executrix.

Mr. Kuhlmann died May 6, 1963. Mrs. Kuhlmann suffered from hardening of the arteries and was adjudicated non compos mentis June 12, 1963. Mrs. Hartmann is the sister of Mr. Kuhlmann and Mrs. Crain is the sister of Mrs. Kuhlmann. In November of 1961, Mrs. Kuhlmann's condition became such that she required special care, and Mrs. Crain took her into her home under an agreement with Mr. Kuhlmann whereby he paid her $100.00 each month plus the necessary medical expenses. After Mr. Kuhlmann's death, the estate paid to Mrs. Crain for Mrs. Kuhlmann's maintenance the sum of $2,477.53. It appears, therefore, that at the time the Kuhlmann-Hartmann account was established Mrs. Kuhlmann was disabled to the extent that she needed special care, but that she had not been adjudicated non compos mentis.

The First City National Bank was named as a defendant in the Plaintiff's Petition. The bank responded by alleging that it was only a stakeholder and tendered the funds

on deposit, $6,358.57, into court. The court discharged the bank, allowing attorney's fees in the sum of $350.00 payable from the fund.

It is clear that of the funds on deposit in the joint account of Mr. and Mrs. Kuhlmann, the sum of $8,127.55 was the separate property of Mrs. Kuhlmann. There is no evidence that she had withdrawn any money from the account and the balance in the account exceeded that figure at all times prior to opening of the Kuhlmann-Hartmann account. There is sufficient evidence to trace these funds into the estate account, which was deposited in court by the bank. Sibley v. Sibley, Tex.Civ. App., 286 S.W.2d 657, writ dism.; United States Fidelity & Guaranty Co. v. First National Bank of Fort Worth, Tex.Civ. App., 81 S.W.2d 213, writ dism.

■ There can be no presumption of a gift to Mr. Kuhlmann from the fact that Mrs. Kuhlmann's inheritance was placed in their joint account. Tison v. Gass, 46 Tex. Civ.App. 163, 102 S.W. 751, writ ref.; Ralls v. Ralls, Tex.Civ.App., 256 S.W. 688, writ dism., w. o. j. The agreement appears to be one for the protection of the bank in case of unauthorized withdrawals, rather than an agreement creating rights as between the depositors, and does not evidence a gift of an interest in the funds to be deposited. Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48.

■ Nor was the withdrawal of the money from the bank account as authorized by the deposit agreement and the subsequent deposit of the same money in the Kuhlmann-Hartmann account, effective to defeat the title to the funds held by Mrs. Kuhlmann. In 1887, when by statute the husband had sole management of the wife's separate property, as well as of the community, the Supreme Court of Texas, in Richardson v. Hutchins, 68 Tex. 81, 89, 3 S.W. 276, held that the husband would be considered a trustee for the wife in managing her separate estate, and held to the duties and liabilities which ordinarily attach to that relation. The Court stated:

■ "The rule is that every trustee is liable for the diversion of a trust fund, and upon the death of the trustee this liability rests upon his legal representative, and must be satisfied out of such funds in his hands as are subject to the payment of the claims of creditors generally. That the husband is made a trustee by operation of law does not change the rule."

In Kemp v. Metropolitan Life Ins. Co., U.S.Ct. of App., 5th Cir., 205 F.2d 857, the Court carefully reviewed the Texas authorities relating to gifts made by the husband of community property. In the opinion the Court says:

"Both parties concede the validity of the principle announced in a very early decision of the Supreme Court of Texas, Stramler v. Coe, 15 Tex. 211, 215, that,

" 'No consent of the wife is necessary to a valid alienation of such [community], property by the husband. But excessive or capricious donations and sales, made with the intent to defraud the wife, would be void; and she would be entitled to her action against the property of the husband and against third possessors.'

"Naming a third person, to whom no obligation is owed, as beneficiary and paying the premiums with community funds amounts to a gift of the community property, Martin v. Moran, 11 Tex.Civ.App. 509, 32 S.W. 904, 905; 1 de Funiak, Principles of Community Property, Sec. 79, p. 214, Sec. 123, p. 353; Speer, Law of Marital Rights in Texas, Sec. 150, pp. 203, 204, Notes 11, 12. There is no consistency in saying that the wife is entitled to one-half the community property and at the same time that the husband may give away such property without restriction, and consequently in all community property jurisdictions some restrictions are imposed on the power of the husband to give away the common property. 1 de Funiak, Principles of Community Property, Secs. 121 and 122.

Apparently Texas recognizes the right of the husband to make moderate gifts for just causes, but excessive or capricious gifts made with intent to defraud the wife are void or at least voidable upon her insistence. * * *

"* * *

"Indeed, appellees' counsel frankly and commendably concede that 'though the statute (Sec. 1 of Article 4619, Rev. Civil Statutes of Texas, 1925, quoted in Footnote 3, supra) makes no exception as to dispositions of community property in fraud of the wife, it is clearly a proper and fixed rule that the power to control the community is limited in this respect.' Their contention is that only those transfers made with actual intent to defraud are subject to attack and that in this case such intent was not shown. * * *

"* * *

"Article 3996, Rev. Civil Statutes of Texas, provides that, 'Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, * * * given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void.' In interpreting that article, the Supreme Court of Texas in Biccochi v. Casey-Swasey, 91 Tex. 259, 42 S.W. 963, 964, said:

"'Under this statute we do not consider it material to determine whether the wife could be considered a creditor or not, because she, having a community interest in the land, would be embraced in the language, "or other persons of or from what they are or may be lawfully entitled to" * * *.'

"We think that the District Judge and appellees' counsel overlooked the distinction between conveyances made for a valuable consideration and voluntary conveyances made without consideration or for inadequate consideration. Such voluntary conveyances are at least *prima facie* or presumptively fraudulent as to existing creditors. 24 Am.Jur., Fraudulent Conveyances, Sec. 26; Dixon v. Sanderson, 72 Tex. 359, 10 S.W. 535. * * *

"* * *

"Again in Speer, Law of Marital Rights in Texas, 3rd ed., Sec. 150, p. 203, it is said:

"'His conveyance or disposition of the community may be a legal fraud upon her rights though not intended to wrong her. There may be an utter absence of intended fraud, yet the transaction be voidable. He has no right to make capricious gifts of such property * * *.'

"In Huie, Community Property Laws as Applied to Life Insurance, 18 Texas Law Review 131, it was said:

"'And, in spite of the broad language in some of the cases, there is every reason to believe that, when the matter is finally settled, the extent of the husband's donative power will not be determined solely by an inquiry into his subjective intent. If an intent to defraud is to be required, that intent can be found in the same way that it has been found in the defrauded-creditor cases.'

"In the case of a disposition of community property in fraud of the wife's rights, the wife has a right of recourse, first against the property of the husband, and, if resort to the husband's estate proves unavailing, then, against the person to whom the property has been conveyed or transferred. 1 de Funiak, Principles of Community Property, Sec. 126, pp. 362 and 363; Dixon v. Sanderson, supra."

■ It is our opinion that we need not concern ourselves over the effect of the survivorship agreement entered into when the Kuhlmann-Hartmann account was established. The inventory of the estate of Morris C. Kuhlmann is in evidence. It reflects that the home on Lot 7, C. H. Bingle Subdivision was listed as separate property having a value of $8,000.00, and this is the only property listed as being

separate property. The household effects and the Kuhlmann-Hartmann bank account were listed as community property. The total value of the estate was shown as $18,734.68. There were no claims due to or owing by the estate. The trial court found that a portion of the household effects was the separate property of Mrs. Kuhlmann and that the real estate was community property. These findings are supported by the evidence. It is clear that at the time the Kuhlmann-Hartmann account was established, and at the date of the death of Mr. Kuhlmann, the money in that account was more than double his share of the other community property. The gift of this account to his sister by Mr. Kuhlmann constituted an excessive or capricious donation and was presumptively fraudulent. Kemp v. Metropolitan Life Ins. Co., supra. While appellee did not allege fraud, she has properly traced her ward's separate property into the bank account claimed by appellant. Since Mr. Kuhlmann had no title to these funds, none passed by a gift made by him. After the attorney's fee awarded to the bank is deducted, there remains in the account only $81.02, which was community funds.

■ Mrs. Hartmann was the sole devisee under the will of Mr. Kuhlmann and was entitled to receive only his share of the community property. There was no reversible error in the disposition made of the bank account, by the judgment of the trial court.

■ Appellant urges that the trial court erred in discharging the Bank and allowing attorney's fees, citing Davis v. East Texas Savings & Loan Association, 163 Tex. 361, 354 S.W.2d 926. The facts in this case are different in material respects from those in the Davis case. Here we have a real dispute as to the ownership of funds, which the bank was not required to determine at its peril. The bank was a stakeholder and was properly discharged on depositing the funds in the registry of the court. In such a case attorney's fees are allowed.

■ Appellant also complains that the trial court found the real property not capable of division in kind and ordered it sold and the proceeds divided, when there is no evidence that the property was incapable of being divided in kind. Appellee contends that such evidence was not required because of a stipulation made in open court. The statement of facts reveals this exchange between counsel and the court:

> MR. MEAD: I have one question, we are also in a partition suit and I stated earlier I think I know where the property is and I believe it is incapable of division.

> MR. HARRINGTON: I think it has no part in the trial. I don't think it, the Court has jurisdiction. I would be perfectly happy to call a close to this now.

> MR. MEAD: This was brought as a partition suit.

> MR. HARRINGTON: Are you asking the Court to appoint—

> (Interruption)

> MR. MEAD: He has to decide—he has to establish whether or not it is capable of being divided.

> THE COURT: He said he would stipulate it is not capable of being divided, without prejudice to urge whatever you want to.

> MR. MEAD: All right.

> MR. HARRINGTON: The real property involved. I have a couple more questions I would like to ask Mrs. Crain.

We consider this a stipulation of the fact in question.

The judgment of the trial court is affirmed.