## Kerr *v.* People's Bank of McKeesport, Appellant.

*Banks and banking—Wrongful payment of deposit—Agency.*

William Kerr, the plaintiff, gave money at various times to his brother Varner Kerr, to be deposited for him in a bank. Varner deposited the money in defendant bank, and received a pass book. The account on the inside of the book was opened thus : " The People's Bank, McKeesport, Pa., in account with William Kerr by Varner Kerr, Dr." William could neither read nor write, but more than once Varner exhibited the book to

him and said it was all right.   Varner retained the book, and at various times drew checks upon the deposit, and lost the money in gambling. Four of the checks which were produced at the trial were signed " W. Kerr," but in the handwriting of Varner Kerr.   Other checks were signed " Wm. Kerr by Varner Kerr."   In making the deposit Varner said he was to have entire charge of it.   Plaintiff obtained possession of the pass book, and demanded payment of the amount deposited.   *Held*, that as the bank knew that the money belonged to William, the fact that it was deposited by Varner in William's name and so entered on the books of the bank and in the pass book, warranted no implication of authority in Varner to check it out.

Mr. Justice MITCHELL filed a dissenting opinion on the ground that, under the agreement by which the deposit was accepted by the bank, Varner Kerr was to have entire charge of the account, to make deposits and to withdraw them.   Justices GREEN and THOMPSON concurred in the dissent.

Argued Oct. 26, 1893.   Appeal, No. 152, Oct. T., 1893, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1892, No 232, on verdict for plaintiff, William Kerr.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCH-ELL, DEAN and THOMPSON, JJ.

Assumpsit for bank deposit.   Before McCLUNG, J.

In addition to the facts stated in the opinion of the Supreme Court, the testimony of E. W. Pitts, assistant cashier of the bank, was as follows : " Mr. Varner Kerr introduced himself at the bank, saying that he had some money that he would like to deposit in the name of William Kerr, and that he would have charge of this money ; he would from time to time make deposits and he would draw it out, in the customary manner that persons do introduce themselves.   That was the first I had ever seen or knew of Mr. Kerr.   I issued him this book, in my handwriting, and marked it ' William Kerr by Varner Kerr,' Varner Kerr being the man that deposited it.   I never knew or seen, or haven't ever seen William Kerr ; I never seen him before and haven't seen him since.   The account was opened in that name and he signed it in the same way—the signature.   Q. That is, he signed his name in the 'signature book ' how ?   A. William Kerr by Varner Kerr.   Q. Is that the way in which the book is made out?   A. Yes, sir.   Q. And is that the way in which it was put in the ledger and bank book ?   A. Yes, sir, in the individual ledger, it appears that way.   Q. Now, what deposits were made

by him from time to time ?    A. Well, the book will show ; the
first deposit was on December 27, 1888, $100 ; second deposit
on January 15, 1889, $100 ; this deposit was received by Mr.
Gardner ; Mr. Gardner was assistant cashier at that time.   On
April 12, 1889, $200, and on September 10th of the same year,
$219.   Q. That made altogether $619 ?   A. $619.   Q. Now,
was that money drawn out ?   A. Yes, sir, at different times, in
different amounts.   Q. Did Varner Kerr state to you, at the
time that he brought the money there, who William Kerr was ?
A. No, sir ; he did not ; he said he wished to put the money
in the name of William Kerr, and that he would make addi-
tional deposits, and would withdraw it, and that he would have
entire charge of the account, and, of course, we asked no further
questions ; if we hadn't taken the money, some other bank
would."

The court below charged as follows :

" This action is brought by William Kerr against the Peo-
ple's Bank of McKeesport to recover certain money alleged to
have been deposited there in his name, and which he alleges
has not, in law at least, been paid out by the bank.   The amount
is $669, I believe, and there is nothing here, so far as I have
seen, to indicate that it was to draw interest ; so that, even if
he is entitled to the whole amount of the money, he would not
be entitled to interest, excepting from the date at which the
bank refused to pay it out ; I believe that was some ten or
eleven months ago, so that, as I catch the evidence, the verdict,
at most, would be for $669, with interest from some time last
spring ; probably about the time suit was brought, or a short
time before.

" It appears that that amount of money was deposited in this
bank in the name of William Kerr, and William Kerr alleges
that he gave no authority to any one to check it out.   He ad-
mits, however, that it was sent for deposit by his brother, Var-
ner Kerr, and the defence of the bank is that Varner Kerr drew
this money out, having deposited it in the name of William
Kerr, but with the addendum ' By Varner Kerr,' and upon a
declaration made by Varner Kerr, at the time, that he was to
have control of the money.   Now if these are the facts, and
[if the money was William Kerr's and was, as is admitted, de-
posited in his name, then neither Varner Kerr nor anybody

else would have the right to check it out, unless authorized by William Kerr; and if the bank paid it upon the check of an unauthorized person, it is simply no payment at all.] [5]

" The bank sets up the defence here that it was authorized to pay to Varner Kerr, because he, at the time he made the deposit, represented to them that he was to have charge of the money—represented, practically, that it was an account within his control. That of itself, if that was all, would not be enough. If he represented that this was his money, and he was simply putting it in that name for his own convenience, but that that name represented him, then he could check it out, but if he simply deposited it in the name of William Kerr, and it was William Kerr's money, and he did not represent that William Kerr was another name for Varner Kerr, and that the account was his, or did not give them to understand that, then a payment upon his check would be no payment at all, unless he was authorized to sign the check by William Kerr, and that is denied by William Kerr, and it is not pretended to be shown by the bank, excepting from the fact that Varner Kerr made the deposit and opened the account, and [I say to you, as a matter of law, that the authorizing of him to make the deposit was no authority for him to draw the money, unless it was made as his deposit and with the understanding that this name was to represent him, and was, for the purpose of that deposit, his name. It is simply a question of agency; it is the question of the bank undertaking to deal with him as the agent of William Kerr, and allowing him to sign those checks and draw out that money. If they did that, then they took the risk of his agency, and if it turned out that he was not the agent of William Kerr to sign the checks, the bank is responsible.] [6]

" Practically the only question to be submitted to you is whether this money was deposited in this name, using the name, for the purpose of that deposit, as the name of Varner Kerr; whether it was represented to be his deposit, and that William Kerr was only another name for him. There is, it is true, very little if any evidence of that, but that one question I think it proper to submit to you."

Plaintiff's points were as follows:

" 1. The fact that Varner Kerr was the agent of William Kerr for the purpose of making a deposit, gives rise to no pre-

sumption that Varner Kerr was an agent to withdraw the deposit, and if the bank permitted him to do so simply because he had deposited the money, the bank is liable in this action." Affirmed. [3]

"2. If the bank received the money from Varner Kerr and at the time was informed that Varner Kerr made the deposit for William Kerr, and thereupon opened an account with William Kerr, but permitted Varner Kerr to withdraw the money without notifying William Kerr, the bank is liable to the plaintiff, William Kerr." Affirmed. [4]

Defendant's points were as follows:

1. Request for binding instructions. Refused. [1]

"2. If the jury believe that the plaintiff placed his money in the hands of Varner Kerr to place in some bank, and he did place the same in the defendant's bank, in the name of William Kerr, the plaintiff, and under an arrangement with the bank that he should draw the money, and the bank had no knowledge of the plaintiff, and the money was drawn by Varner Kerr, under the arrangement made by the depositor, Varner Kerr, then the verdict should be for the defendant." Refused. [2]

Verdict and judgment for plaintiff for $709.14. Defendant appealed.

*Errors assigned* were (1–6) instructions, quoting them.

*E. P. Douglass*, for appellant.—The withdrawals were made as it was arranged at the time the deposit was made.

Principals are liable to third parties for the fraud and deceit of their agents when committed in the course of the principal's business: Eilenberger v. Ins. Co., 89 Pa. 464.

In Fletcher, Executor of Bridge, v. The Integrity Title Insurance, Trust and Safe Deposit Co., 31 W. N. 503, the depositor had her book and had every reason to believe that the money could not be withdrawn except by a check signed by her. In the case in hand the book was never in the hands of William Kerr and was brought into the bank every time a deposit was made, and all checks were drawn and signed in the bank by the party making the deposit.

*James M. Nevin*, for appellee.—The bank became the debtor

of William Kerr when it accepted the deposits, and what would
have happened had the bank refused the deposits is entirely
immaterial in this controversy. The jury found that Varner
Kerr did not use the name of William Kerr as an alias for him-
self. The point was fairly submitted to the jury by the court
below.

Plaintiff relies upon Fletcher, Executor of Bridge, v. The In-
tegrity Title Insurance, Trust and Safe Deposit Co., 31 W. N.
503, cited by appellant, which holds that the fact that a person
is the agent of another for the purpose of making a deposit
gives rise to no presumption that he is agent to withdraw the
same.

OPINION BY MR. JUSTICE DEAN, November 6, 1893:

William Kerr, the plaintiff, is a farm laborer near Elizabeth,
in Allegheny county. On the 27th of December, 1888, he gave
to his brother, Varner Kerr, $100 to deposit it for him, William,
in bank in McKeesport. Varner took the money, went to the
People's Bank, McKeesport, deposited it, and had it entered in
a pass book. The bank indorsed the book on the back thus:
" The People's Bank, McKeesport, Pa. In account with William
Kerr, Elizabeth." The account on the inside of the book was
opened thus: " The People's Bank, McKeesport, Pa. In ac-
count with William Kerr, by Varner Kerr, Dr., Dec. 27, 1888,
cash $100." Three other deposits were subsequently made, as
follows: Jan. 15, 1889, $100; April 12, 1889, $200; Sept. 10,
1889, $219; making altogether $619; each deposit being made
by Varner Kerr, the money being given to him by William for
that purpose. William Kerr asked Varner to put the money in
the bank for him, and Varner said he would. William could
neither read nor write, but more than once Varner exhibited
the book to him and said it was all right, but Varner kept pos-
session of the book until a short time before commencement of
this suit.

From the date of the first deposit down to January, 1891,
Varner, by fourteen checks ranging from ten dollars up to $100,
at different dates, drew from the bank the whole $619, and lost
the money in gambling speculations. But four of the checks
were produced at the trial, and they are signed " W. Kerr," but
in the handwriting of Varner Kerr. It is alleged by the bank,

however, that a number of those not produced were signed " Wm. Kerr, by Varner Kerr." In April, 1892, William Kerr, having got the pass book into his possession, presented it at the bank and demanded his money ; the bank refused, because it had already paid it out on checks drawn by Varner. Thereupon this suit was brought. On the trial, the court instructed the jury that, if the money was really William's, the fact that it was deposited by Varner in William's name, and so entered on the books of the bank and in the pass book, warranted no implication of authority in Varner to check it out; but that if, at the suggestion of Varner, the account was opened in the name of William Kerr, only as another form of identifying Varner's deposit of his own money, or what the bank believed to be his own money, then the payment on Varner's check protected the bank, and plaintiff could not recover. The instruction was fully warranted by Fletcher v. The Integrity Title Trust & Safe Deposit Co., 31 W. N. 503. Under the evidence and instructions given, the verdict was for plaintiff.

The defendant's assignments of error are six in number, but are all, in substance, embraced in the first, which complains that the court refused to affirm its second point, as follows :

" That if the jury believe that the plaintiff placed his money in the hands of Varner Kerr to place the same in some bank, and he did place the same in defendant's bank in the name of William Kerr, the plaintiff, and under an arrangement with the bank he should draw the money, and the bank had no knowledge of the plaintiff, and the money was withdrawn by Varner Kerr under an arrangement made by the depositor, Varner Kerr, then the verdict should be for the defendant."

We think the court was right in refusing this instruction. The point asks that the jury shall draw a conclusion from facts, which, standing alone, do not warrant it. It was not important that the bank should have knowledge of William Kerr; acquaintance with or knowledge of him affected not his right nor its liability. Did the bank know it was his money which Varner deposited? If it did, that determined its duty and his right; the duty of safekeeping, his right to payment on proper demand. The money was William's ; he gave it to Varner to deposit in the bank; until that was done, William took all the risk of Varner's honesty ; he might have appropriated it before he

reached the bank; after getting there, he might have deposited it as his own in his own name; or he might have deposited it in an assumed name. As long as the bank had no knowledge of William's ownership, it was not answerable for the dishonesty of his brother.

It is argued, William could not have been deceived by the pass book, for he could neither read nor write. It is probable he did not know accurately the indorsements on the book and the entries in it. His brother several times exhibited it to him, and he knew it contained the evidence of the deposit of the money. But the question is not, just how much did he certainly know, but what did the bank know, for it could both read and write the entries establishing his right to the money it had accepted on deposit. As to what was said when the account was opened, the cashier, Mr. Pitts, testifies: "He, Varner, said he wished to put the money in the name of William Kerr and that he would make additional deposits, and would withdraw it, and that he would have entire charge of the account, and of course we asked no further questions; if we hadn't taken the money some other bank would." At that very time, Varner had an account in his own name in the same bank. This money was accepted and entered not in Varner's, but in William's name; the pass book was delivered crediting it to him; William's residence and post office indorsed on back of the book. Having thus expressly accepted and acknowledged it as William's money, where is the authority to pay to Varner? If William had given a check for the money to one not known to the bank, it would have required evidence of the genuineness of the drawer's signature and of the identity of the payee before parting with it; the payee's mere declaration would hardly have been satisfactory. Yet, on the mere declaration of authority by one man, he is given unlimited power to check out another's money. That this was William's money, is not disputed; that the bank knew it is clearly proven; it follows, then, that Varner had no more right, because he carried it there, to check it out without authority from William, than one who had no connection with the matter; his mere declaration is entitled to no more weight against the clear legal right of the owner than that of the errand boy who is intrusted with his employer's pass book and money for the purpose of deposit. The addition

of the words " by Varner Kerr " is a statement only by whom the money was handed to the bank, and is without other significance. If this had been a collusive arrangement between the brothers to defraud the bank, or if authority, written or parol, had been given Varner by William to check out the money, either would have defeated plaintiff's claim ; but the evidence established the contrary, therefore the judgment should stand.

The assignments of error are overruled, and the judgment is affirmed.

MR. JUSTICE MITCHELL, dissenting :

I concur in the statement of the law in the opinion of the court, but it does not seem to me to meet the facts of this case. The question of liability does not depend on the fact that the money was William Kerr's or even that the bank had notice of his title, but on the agreement under which the bank received it. It is admitted that the money was in Varner Kerr's hands, and that he could dictate the terms on which he would deposit it. He could have put it in his own name, absolutely or as agent or trustee as he pleased. What he did was to deposit it in the name of William Kerr, " by Varner Kerr," and with the express agreement that he was to have entire charge of the account, to make deposits and to withdraw them. Presumably he would not have parted with the money on any other terms. The bank did not know William in the transaction except by Varner, and as William by trusting him with the money had put it in his power to make the terms he did, the bank ought not to be liable in damages for keeping its agreement. It was legally bound to do so until it had notice in fact that Varner's authority had been exceeded or revoked.

JUSTICES GREEN and THOMPSON concur in this dissent.