Waggoner Bank & Trust Company v. Mrs. Cassandra Warren.

No. 2973.   Decided October 26, 1921.

(234 S. W., 387.)

1.—Husband and Wife—Wife's Separate Property—Separation.

The husband's right to the management of the separate estate of his wife depended on his continuance in the discharge of his correlative duties. When they had agreed upon a permanent separation the wife had the same power of management and control of her separate property as though the marriage had been dissolved by the husband's death.   (P. 322).

2.—Same—Notice—Duty to Inquire.

Where the husband and wife make such a contract with another as would be authorized only by peculiar circumstances, such as their separation, their offer to make such a contract implied the existence of the circumstances and sufficed to put the other party on inquiry with reference thereto and give him constructive notice of the facts which such inquiry would have developed.   (Pp. 322, 323).

3.—Same—Case Stated.

The husband and wife, agreeing on a permanent separation, deposited $600 of her separate property in bank subject to his check, and $700 of same in the savings department of the bank to her credit, the bank delivering to her a pass-book and assuring her that the money could not be drawn out except on presentation of the pass-book.   Thereafter the bank paid out this money to the husband on checks drawn by him in his wife's name, and without presentation of the pass-book, which she retained.   *Held* that the bank was liable to the wife for the amount of such deposit, though it had been paid to the husband.   (Pp. 319-324).

4.—Husband and Wife—Wife's Separate Property—Contract.

The contract of deposit of the wife's separate property in the savings department of a bank to her credit, and with the agreement by them and the bank that it should only be paid out on production of the pass-book delivered to her, was not unlawful, irrespective of the bank's knowledge of their separation.   It was such a contract as the husband, as manager of her separate estate, had power to make, and she to receive, and could not be revoked by the husband alone.   O'Connell v. Storey, 105 S. W., 1174, followed.   (P. 323).

5.—Same.

The wife's contract, made with the husband's concurrence and implied authorization, in relation to a personal bank deposit, her separate property subject under the existing law to her husband's management, was, when performed by her, valid against the other party.   Warren v. Wilson, 108 Texas, 264.   (Pp. 323, 324).

Questions certified from the Court of Civil Appeals for the Sixth District, in an appeal from Tarrant County.

The questions were certified in accordance with the ruling of the Supreme Court in proceedings for mandamus.   Warren v. Wilson, 108 Texas, 264.

*Bell & Milam,* for appellant.

Since the husband during the time the marriage relation exists has the sole management of the wife's property he is authorized to draw from a bank money deposited in her name and the bank incurs no liability in paying the same over to the husband. Coleman v. First Natl. Bk. of Waxahachie, 94 Texas, 605.

*Hunter & Hunter,* for appellee.

The law question arises in this case out of the written contract contained in the pass-book, made by appellee with the bank, the bank knowing that it was her separate estate, and she, in person, making the deposit, and that, too, by the consent and acquiescence of her husband, who was present at the time and witnessed the whole thing without objection, receiving part of the draft himself. Kempner v. Conner, 73 Texas, 196; Pitts v. Elsler, 87 Texas, 347; Mining Co. v. Bullis, 68 Texas, 581; Frazier v. Lambert, 115 S. W., 1174; Barnett v. Murray, 54 S. W., 784; Farmers Natl. Bk. v. Hill, 133 S. W., 526; O'Connell v. Story, 105 S. W., 1174; Morgan v. Hayes, 147 S. W., 315.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The certificate of the Honorable Court of Civil Appeals is as follows:

"This was a suit by appellee against appellant to recover $700 which she deposited with appellant in its "savings department." It appeared from the pleadings and the testimony that appellee and Francis Warren were married August 3, 1910, in Ohio, and lived together as husband and wife until November 17, 1910, when, for a reason not disclosed by the testimony in the record, but because, as alleged in the pleadings, appellee had been informed that at the time he married her Warren had living a wife from whom he had not been divorced, they separated, in Fort Worth, appellee returning to her father's home in Ohio. They never afterwards lived together. On the day, but before, they separated, appellee and Warren called together at appellant's bank in Fort Worth, where she presented to appellant's cashier, to whom several days before this time she and Warren had been introduced as husband and wife, a draft on a bank in New York for $1500, and had the cashier to pay her on account thereof $200 in cash, to place to Warren's credit in the commercial department of the bank $600, and to her credit in its savings department $700. The draft was a part of appellee's separate estate, and the testimony was sufficient to support a finding, involved in the judgment rendered, that the cashier knew it. At the time the $700 was placed to appellee's credit the cashier gave her a pass-book in which he had noted the deposit as follows: "The Waggoner Bank and Trust Co., Fort Worth, Texas. Savings De-

partment. In account with Mrs. Cassandra Warren," and then advised her that "the money could not be withdrawn from the bank without sending the book to the bank, or bringing it." On the outside of the cover of the pass-book a statement as follows had been printed: "Take care of this book. It must be presented when money is deposited or withdrawn. Be sure that no unauthorized person secures possession of it. If lost or stolen, notify the bank at once." In the book had been printed "rules and regulations governing deposits and payments" in the bank's savings department. Among those rules were the following: "3 All deposits and all payments shall be entered at the time they are made in the passbook of the depositor. This book shall be the voucher of the depositor, and although the bank will endeavor to prevent fraud on its depositors, yet all payments to persons producing the pass-book issued by the bank shall be valid payments to discharge the bank. 4. Interest at the rate of 4 per cent shall be paid on savings deposits, when the account reaches $10.00 Deposits made on or before the fifth day of any month shall draw interest from the first day of that month; those made after the fifth day of any month shall draw from the first day of the next succeeding month, but no interest shall be allowed on any fraction of a dollar, or any fraction of a month. Money withdrawn between any interest paying period (June 30 and December 31), will be entitled to draw no interest. 5. All drafts drawn on account of deposits made in the bank must be made by the depositor, or by his or her order in writing, and on production of the depositor's pass-book; but all payments made to the person producing the depositor's pass-book shall be valid and good. In the event the pass-book is lost, the bank shall be notified at once. When money is drawn, the book must be brought to the bank to have the payment entered therein, and in all cases in which the whole amount is drawn, the book must be surrendered to the bank. Absent depositors may withdraw their deposits on their order, properly witnessed, blanks for which purpose will be furnished by the bank on request." Appellee relied on the statement made to her by the cashier that the $700, or any part of same, he had placed to her credit in the savings department could not be withdrawn from the bank unless the pass-book was presented to it at the time the application for the withdrawal thereof might be made; and had she known that the bank would recognize a right in Warren to withdraw it without the presentation to it of the pass-book she would not have made the deposit. She retained the book in her possession until March 20, 1911, when she sent it by mail to the bank with a letter requesting it to send her a draft or check for the $700, payable to her father, with whom she was living in Ohio. In reply to her request she was advised by the bank that on December 20, 1910, it had paid to her husband on a check therefor drawn by him in her name $600 of the

amount of the deposit, and on December 29, 1910, on a similar check had paid the remaining $100 to him. On the theory that the payment to Warren was unauthorized by and therefore not binding on her, appellee recovered a judgment against the bank for the $700 with interest thereon. The bank appealed from the judgment, and the appeal having been transferred from the Court of Civil Appeals of the Second District, to which it was prosecuted, to this court, we determined, in an opinion filed November 21, 1912, that the judgment was erroneous in that it should have been in favor of appellant instead of appellee, and therefore reversed it and rendered judgment that appellee take nothing by her suit against appellant. Thereafterwards appellee filed in this court a motion for a rehearing and to certify to the Honorable Supreme Court a question as to the liability of the bank to appellee on the facts stated. The motion to certify was based upon an alleged conflict between the conclusion reached by this court as to the law of the case and conclusions reached by the Honorable Supreme Court in certain cases specified in the motion and conclusions reached by courts of civil appeals in certain cases also specified therein, among the latter being the case of O'Connell v. Storey, decided by the Court of Civil Appeals for the Fourth District, reported in 105 S. W. 1174, where it was held (correctly, we think), that the defendant, having contracted with the wife for her services as a cook, could not when the services had been performed by her with the consent and acquiescence of her husband defeat a recovery by him for the services on the ground that the contract made by her was invalid because her husband had not authorized her to enter into it. This court being of the opinion that the law as announced by us was the law of the state applicable to the facts shown by the record before it, stated above, and that neither the Honorable Supreme Court nor the courts of civil appeals in any of the cases mentioned in the motion to certify had determined it to be otherwise, on such facts, on December 19, 1912 overruled both the motion for a rehearing and to certify. The Honorable Supreme Court having determined, on the application of appellee for a writ of mandamus to compel this court to certify a question to it, that we were in error in concluding that the decision reached by us was not in conflict with the decision of the Court of Civil Appeals of the Fourth District in said case of O'Connell v. Storey, this court now, in compliance with the mandate of the Honorable Supreme Court to do so, and with Article 1623, Vernon's Statutes, certifies questions as follows to your Honors:

1. Did this court err in holding, on the facts hereinbefore stated, that the trial court erred when he rendered judgment in favor of appellee against appellant for the $700 appellee deposited with it?

111 Tex.—21

2. Did this court err in holding as a matter of law that, on said facts, appellee was not entitled to recover of appellant said sum of money or any part of same, and, after reversing the judgment of the trial court in her favor, in rendering judgment here that she take nothing by her suit against appellant?''

We answer each of the questions in the affirmative.

It is evident that Francis Warren and Cassandra Warren, having agreed to an immediate, permanent separation as husband and wife, entered into an agreeement with The Waggoner Bank & Trust Company, whereby fifteen hundred dollars belonging to Cassandra Warren's separate estate was disposed of, as follows: two hundred dollars was retained by Mrs. Cassandra Warren; six hundred dollars was deposited in the Bank under the agreement that it was to be subject to Francis Warren's check; and the remaining seven hundred dollars was deposited in the Bank under the agreement that it was not to be subject to Francis Warren's check but was to be withdrawn only on presentation of a pass-book delivered to Mrs. Cassandra Warren and on her application or order.

We do not think the Bank & Trust Company was free to violate its contractual obligation to Mrs. Cassandra Warren as to the withdrawal of her seven hundred dollars because of any conflict between such obligation and the statute, which, in 1910, gave to the husband the sole management of his wife's separate estate. The husband's right to the sole management of the separate estate of his wife depended upon his continuance in the discharge of his correlative duties. Dority v. Dority, 96 Texas, 226 60 L. R. A., 941, 71 S. W., 950; Wright v. Hays, 10 Texas, 133, 60 Am. Dec., 200. During the permanent separation of the husband and wife, the latter had the same power of management and control of her own separate estate as though the marriage had been dissolved by the husband's death. Clements v. Ewing, 71 Texas, 370, 9 S. W., 312; Davis v. Saladee, 57 Texas, 326. Under the contemplated and actual separation, Francis Warren had no right to continue to manage any property belonging to his wife's separate estate. Cassandra Warren had, however, all the power and authority with respect thereto, of a *feme sole.* Hence, the status of the parties was such, when the contract was made and when it was to be performed, as to make it invulnerable from attack on the ground that 'it withdrew aught from the rightful power of the husband, no matter what its effect might have been had there been no separation nor agreement to separate. Rains v. Wheeler, 76 Texas, 395, 13 S. W., 324.

If the law authorized a husband and wife to enter into a particular contract with another only under extraordinary circumstances, the offer to make such contract would imply the existence of the extraordinary circumstances; and, it would be the duty of the person to whom the offer was made, before accepting same, to inquire as to

the existence of whatever was indispensable to the validity of the contract. Reasonable inquiry by the Bank & Trust Company must have disclosed the facts with regard to the husband and wife's separation. Hence, the Bank & Trust Company had constructive notice of the special facts rendering the contract valid and enforcible, should we assume that, in the absence of such facts, the contract would have been invalid. Wethered v. Boon, 17 Texas, 149.

However, we do not regard the contract as invalid or as revocable by the husband, though there had been no agreement for separation between the husband and wife.

Under the law in 1910, the wife's existence was not merged in that of the husband. As a separate personality, the wife had rights in property, both real and personal. Read v. Allen, 56 Texas, 193; Cullers v. James, 66 Texas, 497, 1 S. W., 314. Broad as was the husband's power of management, it did not authorize the husband alone to divest the wife of title to any property belonging to her separate estate. Kempner v. Comer, 73 Texas, 200, 11 S. W., 194; Richardson v. Hutchins, 68 Texas, 88, 3 S. W., 276. The power of management was conferred on the husband in the interest, and for the benefit, of the wife. The contract here involved was designed to take care of, and safeguard, money belonging to the separate estate of the wife by putting it out at interest with a thoroughly solvent debtor until the wife should elect otherwise. Being a contract beneficial to the separate estate of the wife, it came within the scope of the husband's duty as well as power. Conferring benefits on the wife, through her separate estate, which she was in no wise incapacitated to receive by her general contractual disability, the contract could not be revoked by act of the husband alone, inconsistent with the terms of the contract and defeating one of its cardinal ends.

It was determined by the San Antonio Court of Civil Appeals that a party could not prevent the enforcement of his promise to pay certain compensation to a married woman for personal services which she agreed to perform in the future, on the ground of invalidity in the contract, when the married woman had fully performed the personal services contracted for, with the acquiescence of her husband. O'Connell v. Storey, 105 S. W., 1174. In the opinion awarding the mandamus in this case, it was said by Chief Justice Phillips;

"If the contract of a married woman with reference to her personal earnings, which, by the law in force at the time, were under the husband's control, is enforcible in her interest when performed by her, because of the husband's imputed authorization of the contract, it is evident that her contract, made with the husband's concurrence and implied authorization, in relation to a personal bank deposit, alike subject, under the existing law, to the husband's management, is, when performed by her, equally valid against the other

party availing himself of its benefits.'' Warren v. Willson, 108 Texas, 264, 192 S. W., 530.

On the facts certified, judgment should have been rendered for Mrs. Warren.