## PEOPLE'S NAT. BANK OF TYLER v. WILLIAM TELL LODGE NO. 27, I. O. O. F.

### No. 4578.

Court of Civil Appeals of Texas. Texarkana. Dec. 7, 1934.

Rehearing Denied Dec. 13, 1934.

Lasseter, Simpson & Spruiell, of Tyler, for appellant.

Warren & Warren, of Tyler, for appellee.

LEVY, Justice (after stating the case as above).

■ The real question involved in the case is whether or not the bank had the right in the circumstances to pay and charge the account on its books in the name of "Wm. Tell Lodge #27, I.O.O.F., by E. L. Tucker," with the checks drawn by E. L. Tucker. The lodge demanded the money and the bank refused, because it had already paid it out on checks drawn by E. L. Tucker. It is believed that the bank was legally bound to pay the money to the lodge on its demand, as the evidence established the lodge to be the true owner of the money deposited to the knowledge of the bank, and that the bank had timely notice in fact not to pay out the same to E. L. Tucker, and that there was want of authority in E. L. Tucker to check it out.

The facts are conclusive, and not in uncertainty: That E. L. Tucker was by telegram appointed a Special Deputy Grand Master with the view and expressed authority to do certain things about the affairs of the local lodge. In keeping with the appointment, he made arrangement with a certified accountant to audit the books of the lodge. The treasurer of the local lodge had the legal control of the funds of the local lodge, and was under bond for their safe-keeping and forthcoming. E. L. Tucker undertook to "temporarily" suspend this treasurer from disbursing lodge money during the period of the audit, and he directed the financial secretary of the local lodge to pay over to him (E. L. Tucker) the lodge moneys as collected during the period of the audit. The lodge money so turned over to E. L. Tucker was by him deposited in the bank in the name of "Wm. Tell Lodge #27, I.O.O.F., by E. L. Tucker." He at various times during the audit, lasting some three weeks or more, drew checks against the deposit, and the bank paid them. None of the checks are shown to be for indebtedness of the lodge, unless the $500 for audit. That E. L. Tucker was without any authority from the local lodge or the treasurer to check against the deposit or make disbursements in any wise of the lodge funds. That, as found by the jury, the bank was warned not to pay out the money deposited.

■ It may be conceded that, as a general rule, it is the duty of the bank to pay money on deposit with it to the party in whose name it is deposited. The law presumes that a deposit belongs to and is the money of the person in whose name it is entered, and the bank cannot, as between the bank and the depositor, question his right thereto, and may lawfully pay it out on his demand or check.

That is settled by our decisions. Interstate Nat. Bank v. Claxton, 97 Tex. 576, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885; Silisbee State Bank v. Grocery Co., 103 Tex. 629, 132 S. W. 465, 34 L. R. A. (N. S.) 1207; Waggoner Bank & Trust Co. v. Warren, 111 Tex. 318, 234 S. W. 387. In the present case the deposit of the lodge money in the name of "Wm. Tell Lodge 327, I.O.O.F.," followed by the words "by E. L. Tucker" would operate to disclose to the bank, as the bank otherwise in fact knew, that the money deposited was the lodge's money. The addition of the words "by E. L. Tucker" is a statement only by whom the money was handed to the bank, and is without other significance. Kerr v. People's Bank of McKeesport, 158 Pa. 305, 27 A. 963. Having thus expressly accepted and acknowledged in the form of the deposit account the deposit as the money of the bank, that determined the bank's duty and the right of the lodge to payment on demand. Where then is the authority of E. L. Tucker to check it out? There is absent any evidence of consent or authority from the lodge as true owner or through its officers to E. L. Tucker to check against it or the bank to pay his checks. And E. L. Tucker may not in the circumstances be classed as either the actual or apparent agent of the local lodge to check out in a general way its funds. E. L. Tucker by the telegram from the Grand Master was appointed a Special Deputy Grand Master in the view and clothed with the express authority of accomplishing the two particular things, namely, (1) "Stop all negotiations now pending for borrowing or loan of money in connection with this lodge"; and (2) "Secure the books of the lodge and make arrangements for an audit of the same, the expense to be charged against the lodge funds." In the terms of the telegram there is no suggestion or implication of authority in E. L. Tucker to generally disburse or check in a general way against the funds or bank deposits of the lodge. As the laws of the order appear in the record, the authority of the Grand Master, in virtue of his right of supervision of subordinate lodges, to appoint a Special Deputy Grand Master, may be regarded as existing specially for the purpose to "examine the books, records and financial affairs" of the local lodges. Under the laws of the order, the Special Deputy Grand Master is not, in virtue of his special office, empowered to disburse the funds of the local lodge. The local lodge itself has the exclusive authority over and to make disbursement of its own funds, and there is regulation by the laws of the way and method of disbursement. The local treasurer is the one authorized to pay out the funds, and he is under bond for the safe-keeping and forthcoming of the moneys. In point of fact, the acting and doings of E. L. Tucker were only in pursuance of authority as Special Deputy Grand Master in the furtherance and supervision of an audit of the books of the lodge. As a matter of convenience and orderly proceeding in the audit, as may be considered, he caused the lodge moneys collected through the financial secretary during the period of the audit to be placed by him in the bank in the name of the lodge in the form stated. It may not be rightfully claimed that, where money has been deposited in a bank by one person in the name and to the credit of another, such person merely handing the money to the bank for deposit, and with no other interest in it, can check against it, thinking himself entitled to it. But, aside from any presumed authority, as the bank claimed, in E. L. Tucker to generally check against the deposit, the liability of the bank must turn upon the fact, as found by the jury, of warning or notice in effect not to pay out the deposit.

The evidence goes to show that $500 was paid by the bank on checks of E. L. Tucker as the audit fee. This was owing by the lodge as the understood cost of the audit which was expressly consented to. The bank should be allowed credit for the payment as a matter of right.

The other assignments of error are overruled.

The judgment is modified so as to allow the credit of $500 audit expenses paid, and, as modified, in all things affirmed for $609, with legal interest thereon.

### Appellee's Motion for Rehearing.

Upon review of the evidence, it is concluded that there is not definite proof as to $200 of the audit fee being paid out of the bank deposits by E. L. Tucker. There does appear affirmatively evidence that $300 of the audit fee was paid out; therefore the motion for rehearing is in part granted, and the sum of $300 only is allowed as a credit to the bank. Accordingly, the judgment is modified so as to allow the credit of $300 audit expense paid, and the judgment as modified will be affirmed for $809, with legal interest thereon.