**Roy E. BUCEK, Appellant,**

v.

**Dorothy Land YARBROUGH, Appellee.**

No. 10548.

Court of Civil Appeals of Texas.

Austin.

April 30, 1958.

Hart & Huser, Schulenberg, J. Hudson Moyer, La Grange, for appellant.

C. C. Jopling, La Grange, for appellee.

GRAY, Justice.

Appellant sued appellee to recover on a promissory note and to foreclose a chattel mortgage lien securing its payment.

In his trial petition appellant alleged that the note and chattel mortgage were executed by appellee under her maiden name of Dorothy Land; that at the time she was married to A. C. Yarbrough but was permanently separated and lived apart from him, and that appellee represented to him that the land upon which the personal property purchased was to be located was a part of her separate estate and was to be used to improve and benefit such estate. At the time the suit was filed A. C. Yarbrough was deceased.

The transaction which resulted in the giving of the note and chattel mortgage was appellee's purchase from appellant of a Dairy Mart building and personal property used in connection therewith. This business was the sale of ice cream, soft drinks, hamburgers and other items of food and drink.

Appellee answered, pleaded her coverture, that the property purchased and the note given therefor was not for necessaries for herself or children, was not for the benefit of her separate estate, and denied that she was personally liable on the note.

The property purchased by appellee was at the time located in La Porte, Texas, and was moved from there to Van Vleck in Matagorda County where it was placed on a lot adjoining appellee's home. Jim Shattuck who was appellant's agent in the transaction referred to the Dairy Mart business as "soft cream operations" and testified that appellee told him that the lot on which the property was placed belonged to her "in the name of Dorothy Land" and further said:

"She told me on the first visit that she was permanently separated from her husband, and whatever she did, the store she was putting in would be hers and money she made from it, she would pay for the store with the money she made out of it."

A jury trial was had but the jury failed to agree and was discharged. Thereafter appellee filed her motion praying that a judgment be rendered awarding appellant a foreclosure of the chattel mortgage lien but denying him any judgment for personal liability against her.

A judgment as prayed for by appellee was rendered July 6, 1957. Thereafter appellant timely filed his original and amended motions for new trial. On August 1, 1957, appellant's amended motion for new trial was overruled and he excepted and gave notice of appeal. The record was filed in this Court September 26, 1957.

■ Appellee has filed her motion to dismiss this appeal on the grounds that a motion for new trial was not necessary as a prerequisite to an appeal in this cause and that the 60 day period for filing the record in this Court ran from July 6, 1957 and not from August 1, 1957. In support of her motion appellee cites our opinion in Park v. Essa Texas Corporation, 306 S.W. 2d 383. Writ of error was granted and on March 12, 1957, the Supreme Court rendered its opinion reversing this Court and holding that motions for new trial are sufficient to perfect an appeal.

"* * * whether they be 'prerequisites' or 'non-prerequisites' to the appeal, which are timely filed, presented and disposed of in accordance with the Rules of Civil Procedure relating to motions for new trial." Park v. Essa Texas Corporation, Tex., 311 S.W.2d 228, 231.

Appellee's motion to dismiss the appeal is overruled.

Appellant here presents two points which are:

"The trial court erred in denying appellant personal judgment against appellee for the amount due under the chattel mortgage contract and note.

"The trial court erred in rendering judgment in this cause, there being issue of fact to be resolved by the jury."

At the time appellee executed the note and chattel mortgage sued on she was the wife of A. C. Yarbrough. Appellant however says that at such time she was permanently separated from him and that, in any event, an issue of fact as to this matter was presented.

The trial court did not file findings of fact or conclusions of law and we must determine if his judgment is correct under any theory of law applicable to the case.

Appellant does not urge fraud, misrepresentation or estoppel as against appellee. Neither is there a showing or even a suggestion that appellee's disabilities of coverture had been removed as provided for by Arts. 4617, 4619 or 4626, Vernon's Ann. Civ.St.

■ It is an established rule of law in this State that in order to bind a married woman personally on her contract her authority to make the contract must be conferred by statute. See: Giles v. First National Bank of Brownfield, Tex.Civ. App., 257 S.W.2d 945; 23 Tex.Jur. p. 199, Sec. 169. In Taylor v. Hollingsworth, 142 Tex. 158, 176 S.W.2d 733, 737, the court said:

"It is true that our present statutes authorize a married woman to incur personal obligations or debts for the benefit of her separate estate, but this power does not authorize her to purchase property and bind herself to a personal executory obligation to pay therefor. 23 Tex. Jur. p. 203, and authorities there cited."

■ The testimony of Jim Shattuck, supra, shows without dispute that appellee bought the property for the purpose of transacting a Dairy Mart business and that she expected to pay for it with profits from that business. It is not contended that any part of the purchase price had been or would be paid out of appellee's separate funds. The purchased property cannot be classed as separate property of appellee. 23 Tex. Jur., Secs. 34, 68 and 69, pp. 50, 91 and 93.

Appellant attempts to avoid the effect of the general rules supra on his allegation and testimony to the effect that appellee

and her husband were permanently separated. Then if appellee is to be held personally liable on the note it must be because of the alleged permanent separation.

The evidence shows without dispute that prior to his death A. C. Yarbrough was and for many years had been employed by Humble Oil Company as a driller. His work was at places other than where appellee resided but was within the State.

The note and chattel mortgage made the basis of this suit are dated October 19, 1955, and appellant's original petition was filed April 3, 1957.

The material, uncontradicted evidence as to the marital status of appellee at the time of her execution of the note and chattel mortgage in question, except the one instance later noticed, is the following:

The agent Shattuck testified that he first met appellee in her home in Van Vleck; that he then began negotiations for the sale; that she told him she was married but was permanently separated from her husband, and that he thought she then told him her husband's name. He said that he could have but did not make any inquiry to determine whether appellee and her husband were living together and said:

"A. I had a credit report on her that stated that she was permanently separated.

"Q. So that is where you got it.

"A. Yes, sir. That is all I needed as far as I was concerned.

"Q. That was all you were concerned and then you relied on that credit report?

"A. Yes, sir."

He also said that he did not rely altogether on what appellee told him. The credit report is not before us and its date is not shown.

A. C. Yarbrough and appellee were first married in 1952. They were later divorced but remarried May 3, 1955. The home in which appellee lived was built in 1955, after her remarriage. The evidence shows that A. C. Yarbrough made installment payments on the home and some of its furnishings. A. C. Yarbrough died October 19, 1956.

Appellant testified that the first time he saw appellee was in January or February of 1956, and that she then told him she was separated from her husband. This was after the note and chattel mortgage were executed.

A deputy sheriff testified that he had known appellee for about twenty-three years; that he knew her husband A. C. Yarbrough and that in 1955 he lived within a block and a half of appellee's home. He said that A. C. Yarbrough usually came home on Friday night and would stay until Sunday night or Monday morning; that when Yarbrough was in Van Vleck he stayed at his wife's house, and that they would go to town, to the store and to other places together. He said that to the best of his knowledge appellee and her husband were living together in August, September, October, November and December of 1955 and that they lived together until Yarbrough's death. He also said that appellee had worked in the sheriff's office as a radio dispatcher.

Mr. and Mrs. Murphree gave substantially the same testimony and said that in 1955 they lived approximately a half block from appellee; that they were well acquainted with her and her husband A. C. Yarbrough and that they both visited in their home; that Yarbrough would come home Friday evenings and would stay until Sunday night or Monday morning; that when he was in Van Vleck he stayed in his own home with his wife. They testified that they had seen appellee and Yarbrough together at places other than at their home and that during July, August, September, October, November and December, 1955, they maintained a normal family life.

Appellee testified that after their remarriage she and A. C. Yarbrough lived togeth-

er as husband and wife until his death. She said she did not tell Shattuck that she was permanently separated from her husband, this last statement being the only contradiction in the foregoing testimony.

Other than the testimony of appellant and Shattuck that appellee told them that she was separated from her husband and the testimony of Mrs. Mazach to the effect that she heard a conversation between appellant and appellee in 1956, at a time after the execution of the instrument sued on, in which conversation appellee said she did not have a husband, there is no evidence in the record of any separation after May 3, 1955.

■ It is our opinion that the evidence does not present a fact issue as to whether appellee was permanently separated from her husband at the time she executed the note and chattel mortgage in question.

■ If Shattuck had made an inquiry as to the marital status of appellee, which he said he could have but did not make, then such inquiry would have undoubtedly led to his discovery that appellee and A. C. Yarbrough were not separated at the time. This being true we attach no importance to the contradiction in the evidence noted supra. Shattuck knew that appellee was married and even if appellee represented to him that she was permanently separated from her husband and was therefore lawfully authorized to execute the note and chattel mortgage in question (the question of such authority we do not decide) then she represented the existence of extraordinary circumstances authorizing her to do so and it became the duty of Shattuck to make inquiry as to the existence of such circumstances. In Waggoner Bank & Trust Co. v. Warren, 111 Tex. 318, 234 S.W. 387, 389, a husband and wife had agreed to permanently separate. A deposit was made with the trust company under an agreement that it was not to be subject to the husband's check but was only to be withdrawn on presentation of a passbook delivered to the wife, and on her application or order. The money was withdrawn by the husband on the theory that the husband (at that time) had the right to the sole management of the wife's separate estate. The court said:

"If the law authorized a husband and wife to enter into a particular contract with another only under extraordinary circumstances, the offer to make such contract would imply the existence of the extraordinary circumstances; and, it would be the duty of the person to whom the offer was made, before accepting same, to inquire as to the existence of whatever was indispensable to the validity of the contract. Reasonable inquiry by the Bank & Trust Company must have disclosed the facts with regard to the husband and wife's separation. Hence, the Bank & Trust Company had constructive notice of the special facts rendering the contract valid and enforceable, should we assume that, in the absence of such facts, the contract would have been invalid. Wethered's Adm'r v. Boon, 17 Tex. [143] 149."

By Arts. 4617, 4619 and 4626 supra, the Legislature has authorized the wife to contract without the joinder of the husband when that right has been granted her by a district court. However neither of those statutes were complied with and they have no application to the fact here.

We conclude that the alleged separation of appellee from her husband is not shown and that we must decide if the note was executed by appellee for the benefit of, or in the management or preservation of her separate estate.

In Wyner v. Express Publishing Co., Tex.Civ.App., 288 S.W.2d 583, er. ref., N.R.E., it was held a wife was not personally liable on an advertising contract made for the purpose of facilitating the conduct of her beauty college when she had not complied with Art. 4626, supra. The equipment used in the college was the separate property of the wife and the court held that it could not be said that the advertising con-

tract was made in the necessary protection, preservation or management of this property. And see: Hirshfeld & Co. v. Evans, 127 Tex. 254, 93 S.W.2d 148. Jung v. Dallas Tailor & Laundry Supply Co., Tex.Civ. App., 256 S.W.2d 703.

■ It appears that there is an area of conflict or rather an area that is not included within the rule that a married woman may contract for the benefit of her separate estate and Art. 4626, supra, which authorizes her to have her disabilities of coverture removed and declared to be a feme sole for mercantile and trading purposes. This is also true as to Arts. 4617 and 4619, supra. It appears that if the contract is for the care, improvement or management of the separate estate it is authorized. However here the alleged, but not proved, separate estate was used merely as a convenient location for the business to be carried on. If the business had been located at some place other than on the lot alleged to be separate property then Art. 4626, supra, would be applicable but since it was located on said lot we think it must be said that the location was purely incidental to the business and did not operate to make the contract binding. Hirshfeld & Co. v. Evans, supra.

■ The contract of purchase was wholly executory and the note was to be paid from the business. Under these circumstances it is well settled that the contract cannot be enforced over the wife's plea of coverture. Taylor v. Hollingsworth, supra. Guest v. Cox, Tex.Civ.App., 34 S.W.2d 301.

We conclude that the note was voidable at appellee's option to plead her coverture and that she having urged her coverture as a defense against the note she is not personally liable thereon. Under the judgment rendered appellant recovered the property sold to appellee and this is all that he was entitled to recover. Houston Loan & Investment Co. v. Abernathy, 131 Tex. 601, 117 S.W.2d 1089.

■ Appellee's motion for judgment wherein she prayed that judgment foreclos-ing the chattel mortgage lien be rendered is consistent with this authority, but under the pleadings and the evidence such motion cannot be construed as an admission that the note was a binding obligation of appellee.

The points presented by appellant do not present error and the judgment of the trial court is affirmed.